Katherine Stadler
Erin West, *pro hac vice*
Brady Williamson, *pro hac vice*
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 257-3911
Facsimile: (608) 257-0609
Email: ewest@gklaw.com

Attorneys for Appellants

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------

IN RE:

PURDUE PHARMA LP, *et al.,*[1]

          Debtors.

------------------------------------------------------------------

PURDUE PHARMA L.P., *et al.*

              Plaintiffs,

v.

COMMONWEALTH OF MASSACHUSETTS; *et al.,*

          Defendants.

------------------------------------------------------------------

CHAPTER 11

Case No. 19-23649 (RDD)

(Jointly Administered)

Adv. Pro. No. 19-08289

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Part 1:  Identify the appellant(s), each a named Defendant in this Adversary Proceeding:**

1. Bryant C. Dunaway, in his official capacity as the District Attorney General for the Thirteenth Judicial District, Tennessee;

2. Jennings H. Jones, in his official capacity as the District Attorney General for the Sixteenth Judicial District, Tennessee;

3. Robert J. Carter, in his official capacity as the District Attorney General for the Seventeenth Judicial District, Tennessee;

4. Brent A. Cooper, in his official capacity as the District Attorney General for the Twenty-Second Judicial District, Tennessee;

5. Lisa S. Zavogiannis, in her official capacity as the District Attorney General for the Thirty-First Judicial District, Tennessee; and

6. Baby Doe, by and through his Mother.

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from:  *Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Dkt. No. 105 Filed and Entered 11/06/2019][2].

2. State the date on which the judgment, order, or decree was entered:  **November 6, 2019**.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

---

[2] On November 20, 2019, the Bankruptcy Court entered the *Third Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Dkt. No. 115 Filed and Entered 11/20/2019] (the "Third Amended Order") that further amends the *Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* that is the subject of this Notice of Appeal and Statement of Election, but pursuant to footnote 3 of the Third Amended Order, the Appellants are "bound to the terms of the November 6 Order until April 8, 2020."

| Party | Attorney |
|---|---|
| **APPELLANTS**<br><br>1. Bryant C. Dunaway, in his official capacity as the District Attorney General for the Thirteenth Judicial District, Tennessee;<br><br>2. Jennings H. Jones, in his official capacity as the District Attorney General for the Sixteenth Judicial District, Tennessee;<br><br>3. Robert J. Carter, in his official capacity as the District Attorney General for the Seventeenth Judicial District, Tennessee;<br><br>4. Brent A. Cooper, in his official capacity as the District Attorney General for the Twenty-Second Judicial District, Tennessee;<br><br>5. Lisa S. Zavogiannis, in her official capacity as the District Attorney General for the Thirty-First Judicial District, Tennessee; and<br><br>6. Baby Doe, by and through his Mother. | Katherine Stadler<br>Erin West<br>Brady C. Williamson<br>GODFREY & KAHN, S.C.<br>One East Main Street, Suite 500<br>P.O. Box 2719<br>Madison, WI 53701-2719<br>Phone: 608-257-3911, Fax: 608-257-0609<br>E-mail: kstadler@gklaw.com,<br>ewest@gklaw.com, bwilliam@gklaw.com |
| **APPELLEES**[3]<br><br>1. Purdue Pharma LP;<br><br>2. Purdue Pharma Inc.;<br><br>3. Purdue Transdermal Technologies L.P.;<br><br>4. Purdue Pharma Manufacturing L.P.; | Marshall S. Huebner<br>Benjamin S. Kaminetzky<br>James I. McClammy<br>Marc J. Tobak<br>Gerard X. McCarthy<br>DAVIS POLK & WARDWELL LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Phone:  212-450-4000<br>Fax:  212-701-5800 |

---

[3] The Appellees are the named Plaintiffs in this Adversary Proceeding and are the movants that filed the *Motion for a Preliminary Injunction* [Adv. Dkt. No. 2] seeking entry of the *Second Amended Order pursuant to 11 U.S.C. § 105(a) granting Motion for a Preliminary Injunction* [Adv. Dkt. No. 105] (the "Preliminary Injunction Order") now on appeal.  The Preliminary Injunction Order enjoins each of the more than 2,175 governmental and private defendants to this Adversary Proceeding.

| | |
|---|---|
| 5.  Purdue Pharmaceuticals L.P.;<br><br>6.  Purdue Pharma of Puerto Rico;<br><br>7.  Purdue Pharmaceutical Products L.P.;<br><br>8.  Rhodes Pharmaceuticals L.P.;<br><br>9.  Rhodes Technologies; and<br><br>10. Avrio Health L.P. | E-mail:  marshall.huebner@davispolk.com;<br>ben.kaminetzky@davispolk.com;<br>james.mcclammy@davispolk.com;<br>marc.tobak@davispolk.com;<br>gerard.mccarthy@davispolk.com |

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158 (c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐      Appellant(s) elect to have the appeal heard by the United States District Court

rather than by the Bankruptcy Appellate Panel.

*Not Applicable in this District.*

**Part 5: Sign below**

Dated: November 20, 2019.

GODFREY & KAHN, S.C.

By:  *s/Katherine Stadler*
       Katherine Stadler
       NY#4938064
       Erin West
       *admitted pro hac vice*
       Brady Williamson
       *admitted pro hac vice*
       Attorneys for Appellants

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI  53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609
E-mail: kstadler@gklaw.com, ewest@gklaw.com, bwilliam@gklaw.com

CERTIFICATE OF SERVICE

A true and correct copy of the above and forgoing document was served on the all parties receiving notice ECF electronic service and by First Class U.S. Mail or E-Mail on November 20, 2019 on the following parties on the Master Service List in effect as of this date, pursuant to the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* [Bankruptcy Dkt. No. 498]:

Chambers of the Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY10601

Office of the United States Trustee for the Southern District of New York
201 Varick Street, Suite 1006
New York, NY 10014
Attn: Paul K. Schwartzberg

The Parties on the attached **Exhibit A**.

21508364.1

JS 44C/SDNY
REV. 06/01/17

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER      ATTORNEYS (IF KNOWN)

**Katherine Stadler, Godfrey & Kahn, S.C.**
**1 E. Main St, Ste 500, Madison, WI 53703**
**608-284-2654 kstadler@gklaw.com**

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

**28 USC 1332, 28 USC 157(a), 11 U.S.C. § 105(a)**

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No ■ Yes ☐      Judge Previously Assigned

If yes, was this case Vol. ☐ Invol. ☐ Dismissed. No ☐ Yes ☐   If yes, give date _____ & Case No. _____

**Is this an international arbitration case?**       No ■       Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*       NATURE OF SUIT

### TORTS

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | | [ ] 367 HEALTHCARE/ | | | |
| [ ] 110   INSURANCE | [ ] 310 AIRPLANE | PHARMACEUTICAL PERSONAL | [ ] 625 DRUG RELATED | [x] 422 APPEAL | [ ] 375 FALSE CLAIMS |
| [ ] 120   MARINE | [ ] 315 AIRPLANE PRODUCT | INJURY/PRODUCT LIABILITY | SEIZURE OF PROPERTY | 28 USC 158 | [ ] 376 QUI TAM |
| [ ] 130   MILLER ACT | LIABILITY | [ ] 365 PERSONAL INJURY | 21 USC 881 | [ ] 423 WITHDRAWAL | [ ] 400 STATE |
| [ ] 140   NEGOTIABLE | [ ] 320 ASSAULT, LIBEL & | PRODUCT LIABILITY | [ ] 690 OTHER | 28 USC 157 | REAPPORTIONMENT |
| INSTRUMENT | SLANDER | [ ] 368 ASBESTOS PERSONAL | | | [ ] 410 ANTITRUST |
| [ ] 150   RECOVERY OF | [ ] 330 FEDERAL | INJURY PRODUCT | | | [ ] 430 BANKS & BANKING |
| OVERPAYMENT & | EMPLOYERS' | LIABILITY | **PROPERTY RIGHTS** | | [ ] 450 COMMERCE |
| ENFORCEMENT | LIABILITY | | | | [ ] 460 DEPORTATION |
| OF JUDGMENT | [ ] 340 MARINE | **PERSONAL PROPERTY** | [ ] 820 COPYRIGHTS | | [ ] 470 RACKETEER INFLU- |
| [ ] 151   MEDICARE ACT | [ ] 345 MARINE PRODUCT | | [ ] 830 PATENT | | ENCED & CORRUPT |
| [ ] 152   RECOVERY OF | LIABILITY | [ ] 370 OTHER FRAUD | [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION | ORGANIZATION ACT |
| DEFAULTED | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | | | (RICO) |
| STUDENT LOANS | [ ] 355 MOTOR VEHICLE | | [ ] 840 TRADEMARK | | [ ] 480 CONSUMER CREDIT |
| (EXCL VETERANS) | PRODUCT LIABILITY | | | **SOCIAL SECURITY** | [ ] 490 CABLE/SATELLITE TV |
| [ ] 153   RECOVERY OF | [ ] 360 OTHER PERSONAL | | **LABOR** | | |
| OVERPAYMENT | INJURY | [ ] 380 OTHER PERSONAL | | [ ] 861 HIA (1395ff) | [ ] 850 SECURITIES/ |
| OF VETERAN'S | [ ] 362 PERSONAL INJURY - | PROPERTY DAMAGE | [ ] 710 FAIR LABOR | [ ] 862 BLACK LUNG (923) | COMMODITIES/ |
| BENEFITS | MED MALPRACTICE | [ ] 385 PROPERTY DAMAGE | STANDARDS ACT | [ ] 863 DIWC/DIWW (405(g)) | EXCHANGE |
| [ ] 160   STOCKHOLDERS | | PRODUCT LIABILITY | [ ] 720 LABOR/MGMT | [ ] 864 SSID TITLE XVI | |
| SUITS | | | RELATIONS | [ ] 865 RSI (405(g)) | |
| [ ] 190   OTHER | | **PRISONER PETITIONS** | [ ] 740 RAILWAY LABOR ACT | | [ ] 890 OTHER STATUTORY |
| CONTRACT | | [ ] 463 ALIEN DETAINEE | [ ] 751 FAMILY MEDICAL | **FEDERAL TAX SUITS** | ACTIONS |
| [ ] 195   CONTRACT | | [ ] 510 MOTIONS TO | LEAVE ACT (FMLA) | | [ ] 891 AGRICULTURAL ACTS |
| PRODUCT | **ACTIONS UNDER STATUTES** | VACATE SENTENCE | | [ ] 870 TAXES (U.S. Plaintiff or | |
| LIABILITY | | 28 USC 2255 | [ ] 790 OTHER LABOR | Defendant) | |
| [ ] 196 FRANCHISE | **CIVIL RIGHTS** | [ ] 530 HABEAS CORPUS | LITIGATION | [ ] 871 IRS-THIRD PARTY | [ ] 893 ENVIRONMENTAL |
| | | [ ] 535 DEATH PENALTY | [ ] 791 EMPL RET INC | 26 USC 7609 | MATTERS |
| | [ ] 440   OTHER CIVIL RIGHTS | [ ] 540 MANDAMUS & OTHER | SECURITY ACT (ERISA) | | [ ] 895 FREEDOM OF |
| **REAL PROPERTY** | (Non-Prisoner) | | | | INFORMATION ACT |
| | [ ] 441 VOTING | | **IMMIGRATION** | | [ ] 896 ARBITRATION |
| [ ] 210   LAND | [ ] 442 EMPLOYMENT | **PRISONER CIVIL RIGHTS** | | | [ ] 899 ADMINISTRATIVE |
| CONDEMNATION | [ ] 443 HOUSING/ | | [ ] 462 NATURALIZATION | | PROCEDURE ACT/REVIEW OR |
| [ ] 220   FORECLOSURE | ACCOMMODATIONS | [ ] 550 CIVIL RIGHTS | APPLICATION | | APPEAL OF AGENCY DECISION |
| [ ] 230   RENT LEASE & | [ ] 445 AMERICANS WITH | [ ] 555 PRISON CONDITION | [ ] 465 OTHER IMMIGRATION | | |
| EJECTMENT | DISABILITIES - | [ ] 560 CIVIL DETAINEE | ACTIONS | | [ ] 950 CONSTITUTIONALITY OF |
| [ ] 240   TORTS TO LAND | EMPLOYMENT | CONDITIONS OF CONFINEMENT | | | STATE STATUTES |
| [ ] 245   TORT PRODUCT | [ ] 446   AMERICANS WITH | | | | |
| LIABILITY | DISABILITIES -OTHER | | | | |
| [ ] 290   ALL OTHER | [ ] 448 EDUCATION | | | | |
| REAL PROPERTY | | | | | |

*Check if demanded in complaint:*

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $_____   OTHER _____

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.
AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

JUDGE _____   DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: ☐ YES ■ NO       NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN x IN ONE BOX ONLY)* **ORIGIN**

■ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from (Specify District)

☐ 6 Multidistrict Litigation (Transferred)

☐ 7 Appeal to District Judge from Magistrate Judge

■ a. all parties represented

☐ b. At least one party is pro se.

☐ 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)* **BASIS OF JURISDICTION** *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ■ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☐ 4 DIVERSITY

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

## COURTHOUSE ASSIGNMENT

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ■ WHITE PLAINS    ☐ MANHATTAN

11-19-19
DATE

*Katheri Stadler*
SIGNATURE OF ATTORNEY OF RECORD

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[X] YES (DATE ADMITTED Mo. 8 Yr. 2011 )
Attorney Bar Code # KS6831

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Clear Form    Save    Print

# EXHIBIT A

In re: Purdue Pharma L.P., *et al.*
Master Service List
Case No. 19-23649 (RDD)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Counsel to the Ad Hoc Committee of NAS Babies | Tarter Krinsky & Drogin LLP | Attn: Scott S. Markowitz, Esq., Rocco A. Cavaliere, Esq., & Michael Z. Brownstein, Esq. | 1350 Broadway, 11th Floor | | New York | NY | 10018 | | 212-216-8000 | 212-216-8001 | smarkowitz@tarterkrinsky.com rcavaliere@ta11terkrinsky.com mbrownsteinr@tarterkrinsky.com |
| Counsel to the Attorney General, State of Florida | Agentis PLLC | Attn: Christopher B. Spuches, Esq. | 55 Alhambra Plaza, Suite 800 | | Coral Gables | FL | 33134 | | 305-722-2002 | | cbs@agentislaw.com |
| Top 3 Largest Secured Creditor | Air Liquide Industrial U.S. LP | Attn: President or General Counsel | 180 W. Germantown Pike | | East Norriton | PA | 19401 | | | | |
| Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al. | Akin Gump Strauss Hauer & Feld LLP | Attn: Ira S. Dizengoff, Arik Preis, Mitchell P. Hurley, Sara L. Brauner, & Edan Lisovicz | One Bryant Park | | New York | NY | 10036 | | 212-872-1000 | 212-872-1002 | idizengoff@akingump.com apreis@akingump.com mhurley@akingump.com sbrauner@akingump.com elisovicz@akingump.com |
| Counsel to OptumRX, Inc. | Alston & Bird LLP | Attn: William Hao | | | New York | NY | 10016-1387 | | 212-210-9400 | 212-210-9444 | william.hao@alston.com |
| Counsel to OptumRX, Inc. | Alston & Bird LLP | Attn: William Sugden and Jacob Johnson | 1201 West Peachtree Street | | Atlanta | GA | 30309-3424 | | 404-881-7000 | 404-881-7777 | will.sugden@alston.com jacob.johnson@alston.com |
| Counsel to Ryan Hampton | Andrews & Thornton | Attn: Anne Andrews, Sean T. Higgins, Robert S. Siko | 4701 Von Karman Ave, Suite 300 | | Newport Beach | CA | 92660 | | 949-748-1000 | 949-315-3540 | aa@andrewsthornton.com shiggins@andrewsthornton.com rsiko@andrewsthornton.com |
| State Attorney General | Attorney General for the State of Wisconsin | Attn: Jennifer L. Vandermeuse - Assistant Attorney General | 17 West Main Street, P.O. Box 7857 | | Madison | WI | 53707 | | 608-266-7741 | | vandermeusejl@doj.state.wi.us |
| Counsel to Community Health Systems, Inc., Tenet Healthcare Corporation, and Infirmary Health System, Inc., And Class of approximately 384 hospitals on Exhibit A | Barrett Law Group, P.A. | Attn: John W. Barrett, Esq. | P.O. Box 927 | 404 Court Square | Lexington | MS | 39095 | | 662-834-2488 | | DonBarrettPA@gmail.com |
| Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al. | Bayard, P.A. | Attn: Justin R. Alberto, Erin R. Fay, & Daniel N. Brogan | 600 North King Street, Suite 400 | | Wilmington | DE | 19801 | | 302-655-5000 | 302-658-6395 | jalberto@bayardlaw.com efay@bayardlaw.com dbrogan@bayardlaw.com |
| Counsel to United Parcel Service, Inc. | Bialson, Bergen & Schwab | Attn: Lawrence M. Schwab and Kenneth T. Law | 633 Menlo Ave, Suite 100 | | Menlo Park | CA | 94025 | | 650-857-9500 | 650-494-2738 | Klaw@bbslaw.com |
| Committee of Unsecured Creditors | Blue Cross and Blue Shield Association | Attn: Brendan Stuhan, Assistant General Counsel | 1310 G Street NW | | Washington | DC | 20005 | | 202-942-1069 | | |
| Interested Party | BMC Group, Inc. | Attn: T Feil | 3732 W. 120th Street | | Hawthorne | CA | 90250 | | | | bmc@ecfAlerts.com |
| Counsel to Dr. Richard Sackler, Jonathan Sackler, David Sackler, and Beverly Sackler | Bracewell LLP | Attn: Daniel S. Connolly & Robert G. Burns | 1251 Avenue of the Americas, 49th Floor | | New York | NY | 10020-1100 | | 212-938-6100 | 212-508-6101 | daniel.connolly@bracewell.com robert.burns@bracewell.com |
| Counsel to Ad Hoc Committee of Governmental and other Contingent Litigation Claimants | Brown Rudnick LLP | Attn: Gerard T. Cicero and David J. Molton | 7 Times Square | | New York | NY | 10036 | | 212-209-4939; 212-209-4822 | 212-938-2883; 212-938-2822 | GCicero@brownrudnick.com DMolton@brownrudnick.com |
| Counsel to Ad Hoc Committee of Governmental and other Contingent Litigation Claimants | Brown Rudnick LLP | Attn: Steven D. Pohl | One Financial Center | | Boston | MA | 02111 | | 617-856-8594 | 617-289-0433 | spohl@brownrudnick.com |
| Counsel to Mckesson Corporation, on Behalf of itself and Certain Corporate Affiliates | Buchalter, a Professional Corporation | Attn: Jeffrey K. Garfinkle, Esq., Daniel H. Slate, Esq. | 18400 Von Karman Avenue, Suite 800 | | Irvine | CA | 92612-0514 | | 949-760-1121 | 949-720-0182 | jgarfinkle@buchalter.com dslate@buchalter.com |
| Counsel for the People of the State of California | California Department of Justice | Attn: Bernard A. Eskandari | 300 South Spring Street, Suite 1702 | | Los Angeles | CA | 90013 | | 213-269-6348 | 213897-2802 | bernard.eskandari@doj.ca.gov |
| Counsel for the People of the State of California | California Department of Justice | Attn: Judith A. Fiorentini - Supervising Deputy Attorney General | 600 West Broadway, Suite 1800 | | San Diego | CA | 92101 | | 619-738-9343 | 619-645-2271 | |
| Counsel to the Multi-State Governmental Entities Group | Caplin & Drysdale, Chartered | Attn: Kevin Maclay, James Wehner, Jeffrey Liesemer, Todd Phillips | One Thomas Circle, NW, Suite 1100 | | Washington | DC | 20005 | | 202-862-5000 | 202-429-3301 | kmaclay@capdale.com jwehner@capdale.com jliesemer@capdale.com tphillips@capdale.com |
| Counsel to the State of West Virginia, ex. rel. Patrick Morrisey, Attorney General | Carter Ledyard & Milburn LLP | Attn: Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | bankruptcy@clm.com |
| United States Bankruptcy Court for the Southern District of New York | Chambers of Honorable Robert D. Drain | Purdue Pharma L.P. - Chambers Copy | US Bankruptcy Court SDNY | 300 Quarropas Street, Room 248 | White Plains | NY | 10601 | | 914-467-7250 | | |
| Counsel to the Commonwealth of Massachusetts | Commonwealth of Massachusetts | Attn: Eric M. Gold, Assistant AG | Chief, Health Care Division | Office of the AG, One Ashburton Place | Boston | MA | 02108 | | 617-727-2200 | | eric.gold@mass.gov |
| Counsel to Commonwealth of Pennsylvania | Commonwealth of Pennsylvania | Attn: Carol E. Momjian - Senior Deputy AG | Office of AG, The Phoenix Building | 1600 Arch Street, Suite 300 | Philadelphia | PA | 19103 | | 215-560-2128 | 717-772-4526 | cmomjian@attorneygeneral.gov |
| State Attorney General | Commonwealth of Puerto Rico | Attn: Bankruptcy Department | Apartado 9020192 | | San Juan | PR | 00902-0192 | | 787-721-2900 | 787-729-2059 | |
| Counsel to the State of Arizona | Consovoy McCarthy PLLC | Attn: J. Michael Connolly | 1600 Wilson Boulevard, Suite 700 | | Arlington | VA | 22201 | | 703-243-9423 | 571-216-9450 | mike@consovoymccarthy.com |

In re: Purdue Pharma L.P., *et al.*
Master Service List
Case No. 19-23649 (RDD)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Counsel to Community Health Systems, Inc., Tenet Healthcare Corporation, and Infirmary Health System, Inc., And Class of approximately 384 hospitals on Exhibit A | Cuneo Gilbert & Laduca, LLP | Attn: Jonathan W. Cuneo, Esq. | 16 Court Street, Suite 1012 | | Brooklyn | NY | 11241 | | 202-789-3960 | | jonc@cuneolaw.com |
| Counsel to Community Health Systems, Inc., Tenet Healthcare Corporation, and Infirmary Health System, Inc., And Class of approximately 384 hospitals on Exhibit A | Cuneo Gilbert & Laduca, LLP | Attn: Jonathan W. Cuneo, Esq. | 4725 Wisconsin Avenue, NW, Suite 200 | | Washington | DC | 20016 | | 202-789-3960 | | jonc@cuneolaw.com |
| Committee of Unsecured Creditors | CVS Caremark Part D Services L.L.C. and Caremarkpcs Health, L.L.C. | Attn: Andrea Zollett, Senior Legal Counsel | 2211 Sanders Road, NBT-9 | | Northbrook | IL | 60062 | | 847-599-4106 | | |
| Counsel to the Debtors and Debtors in Possession | Davis Polk & Wardwell LLP | Attn: Marshall Scott Huebner, Benjamin S. Kaminetzky, Timothy Graulich, Christopher Robertson and Eli J. Vonnegut | 450 Lexington Avenue | | New York | NY | 10017 | | 212-450-4000 | 212-701-5800 | Purdue.noticing@dpw.com |
| Counsel to Counsel to Nevada Counties and Municipalities | Eglet Adams | Attn: Robert M. Adams, Artemus W. Ham, & Erica D. Entsminger | 400 South 7th Street, Suite 400 | | Las Vegas | NV | 89101 | | 702-450-5400 | | badams@egletlaw.com aham@egletlaw.com eentsminger@egletlaw.com |
| Counsel to CVS Caremark Part D Services, L.L.C. and CaremarkPCS Health, L.L.C. | Foley & Lardner LLP | Attn: Geoffrey S. Goodman | 321 N. Clark Street, Suite 2800 | | Chicago | IL | 60654-5313 | | 312-832-4500 | 312-832-4700 | ggoodman@foley.com |
| Counsel to CVS Caremark Part D Services, L.L.C. and CaremarkPCS Health, L.L.C. | Foley & Lardner LLP | Attn: Leah M. Eisenberg, Esq. | 90 Park Avenue | | New York | NY | 10016 | | 212-682-7474 | 713-276-6727 | leisenberg@foley.com |
| Counsel to Old Republic Insurance Company and its affiliated entities | Fox Swibel Levin & Carroll LLP | Attn: Suj M. Pandya and Margaret M. Anderson | 200 W. Madison Street, Suite 3000 | | Chicago | IL | 60606 | | 312-224-1200 | 312-224-1201 | spandya@foxswibel.com panderson@foxswibel.com |
| Counsel to Walgreen Co., Walgreen Eastern Co., Inc. Walgreen Arizona Drug Co., for themselves and certain corporate affiliates and subsidiaries | Frankgecker LLP | Attn: Joseph D. Frank and Jeremy C. Kleinman | 1327 W. Washington Blvd., Suite 5 G-H | | Chicago | IL | 60607 | | 312-276-1400 | 312-276-0035 | jfrank@fgllp.com jkleinman@fgllp.com |
| Counsel to Ad Hoc Committee of Governmental and other Contingent Litigation Claimants | Gilbert, LLP | Attn: Craig Literland, Kami Quinn, and Scott Gilbert | 1100 New York Ave., NW | Suite 700 | Washington | DC | 20005 | | 202-772-2277; 202-772-2264; 202-772-2336 | | litherlandc@gilbertlegal.com quinnk@gilbertlegal.com gilberts@gilbertlegal.com |
| Counsel to the Arkansas Plaintiffs and the Tennessee Plaintiffs | Godfrey & Kahn, S.C. | Attn: Katherine Stadler | One East Main Street, Suite 500 | | Madison | WI | 53703 | | 608-257-3911 | 608-257-0609 | kstadler@gklaw.com |
| Counsel to Teva Pharmaceuticals USA, Inc., Anda, Inc. and Teva Canada Limited | Goodwin Procter LLP | Attn: Michael H. Goldstein, William P. Weintraub, & Howard S. Steel | The New York Times Building | 620 Eighth Avenue | New York | NY | 10018 | | 212-813-8800 | 212-355-3333 | mgoldstein@goodwinlaw.com wweintraub@goodwinlaw.com hsteel@goodwinlaw.com |
| Counsel to Blue Cross Blue Shield Association | HAGENS BERMAN SOBOL SHAPIRO LLP | Attn: Thomas M. Sobol, Lauren G. Barnes | 55 Cambridge Parkway, Suite 301 | | Cambridge | MA | 02142 | | 617-482-3700 | 617-482-3003 | purduebankruptcy@hbsslaw.com |
| Counsel to Express Scripts, Inc., Express Scripts Senior Care Holdings, Inc., and Ascent Health Services | Husch Blackwell LLP | Attn: Caleb T. Holzaepfel | 736 Georgia Avenue, Suite 300 | | Chattanooga | TN | 37402 | | 423-755-2654 | 423-266-5499 | Caleb.Holzaepfel@huschblackwell.com |
| Counsel to Express Scripts, Inc., Express Scripts Senior Care Holdings, Inc., and Ascent Health Services | Husch Blackwell LLP | Attn: Marshall C. Turner | 190 Carondelet Plaza, Suite 600 | | St. Louis | MO | 63105-3433 | | 314-480-1500 | 314-480-1505 | marshall.turner@huschblackwell.com |
| Top 3 Largest Secured Creditor | Ikon Financial Services | Attn: President or General Counsel | 1738 Bass Rd | | Macon | GA | 31210-1043 | | | | |
| Internal Revenue Service | Internal Revenue Service | Centralized Insolvency Operation | 2970 Market Street | Mail Stop 5 Q30 133 | Philadelphia | PA | 19104-5016 | | 800-973-0424 | 855-235-6787 | |
| Internal Revenue Service | Internal Revenue Service | Centralized Insolvency Operation | P.O. Box 7346 | | Philadelphia | PA | 19101-7346 | | 800-973-0424 | 855-235-6787 | |
| Counsel to Mckesson Corporation, on Behalf of itself and Certain Corporate Affiliates | Jenner & Block, LLP | Attn: Catherine L. Steege, Esq. | 353 N. Clark Street | | Chicago | IL | 60654-3456 | | 312-220-9350 | 312-527-0484 | CSteege@jenner.com |
| Counsel to Mckesson Corporation, on Behalf of itself and Certain Corporate Affiliates | Jenner & Block, LLP | Attn: Richard Levin, Esq. | 919 Third Avenue | | New York | NY | 10022 | | 212-819-1600 | 212-891-1699 | rlevin@jenner.com |
| Counsel to Dr. Richard Sackler, Jonathan Sackler, David Sackler, and Beverly Sackler | Joseph Hage Aaronson LLC | Attn: Gregory P. Joseph, Mara Leventhal, Douglas J. Pepe, Peter R. Jerdee, & Christopher J. Stanley | 485 Lexington Avenue | 30th Floor | New York | NY | 10017 | | 212-407-1200 | | mleventhal@jha.com dpepe@jha.com pjerdee@jha.com cstanley@jha.com gjoseph@jha.com |
| Counsel to Fredrick Hill | Kasen & Kasen, P.C. | Attn: Jenny R. Kasen, Esq. | Society Hill Office Park | 1874 E. Marlton Pike, Suite 3 | Cherry Hill | NJ | 08003 | | 856-424-4144 | 856-424-7565 | jkasen@kasenlaw.com |
| Counsel to the State of Arizona | Keller Lenkner LLC | Attn: Seth A. Meyer | 150 N. Riverside Plaza, Suite 4270 | | Chicago | IL | 60606 | | 312-741-5220 | | sam@kellerlenkner.com |
| Counsel to State of Washington | Kleinberg, Kaplan, Wolff & Cohen, P.C. | Attn: Matthew J. Gold and Robert M. Tuchman | 551 Fifth Avenue, 18th Floor | | New York | NY | 10176 | | 212-986-6000 | 212-986-8866 | mgold@kkwc.com rtuchman@kkwc.com |
| Counsel to Ad Hoc Committee of Governmental and other Contingent Litigation Claimants | Kramer Levin Naftalis & Frankel | Attn: Kenneth Eckstein and Rachael Ringer | 1177 Avenue of the Americas | | New York | NY | 10036 | | 212-715-9229; 212-715-9506 | 212-715-8229; 212-715-8187 | keckstein@kramerlevin.com rringer@kramerlevin.com |
| Counsel to Counsel to Nevada Counties and Municipalities | Loeb & Loeb LLP | Attn: Vadim J. Rubinstein, Esq | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | vrubinstein@loeb.com |

In re: Purdue Pharma L.P., *et al.*
Master Service List
Case No. 19-23649 (RDD)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Committee of Unsecured Creditors | LTS Lohmann Therapy Systems Corporation | Attn: Stephanie Satz, General Counsel (US) | 21 Henderson Drive | | West Caldwell | NJ | 07006 | | 973-276-8925 | | |
| Counsel to Old Republic Insurance Company and its affiliated entities | Luskin, Stern & Eisler LLP | Attn: Michael Luskin and Richard Stern | Eleven Times Square | | New York | NY | 10036 | | 212-597-8200 | 212-974-3205 | luskin@lsellp.com stern@lsellp.com |
| Counsel to Giant Eagle, Inc. | Marcus & Shapira LLP | Attn: Darlene M. Nowak, Esq., Robert M. Barnes, Esq. | One Oxford Centre | 301 Grant Street, 35th Floor | Pittsburgh | PA | 15219 | | 412-338-5214 | 412-391-8758 | nowak@marcus-shapira.com rbarnes@marcus-shapira.com |
| Counsel to Westchester Fire Insurance Company | McElroy, Deutsch, Mulvaney & Carpenter, LLP | Attn: Gary D. Bressler, Esquire | 1617 John F. Kennedy Blvd., Ste. 1500 | | Philadelphia | PA | 19103 | | 215-557-2900 | 215-557-2990 | gbressler@mdmc-law.com |
| Counsel to Westchester Fire Insurance Company | McElroy, Deutsch, Mulvaney & Carpenter, LLP | Attn: Michael Morano, Esquire, Nicole Leonard, Esquire | 225 Liberty Street, 36th Fl. | | New York | NY | 10281 | | 212-483-9490 | 212-483-9129 | mmorano@mdmc-law.com nleonard@mdmc-law.com |
| Counsel to Dr. Richard Sackler, Jonathan Sackler, David Sackler, and Beverly Sackler | Milbank LLP | Attn: Gerard Uzzi, Esq., Eric Stodola, Esq., & Alex Lees, Esq. | 55 Hudson Yards | | New York | NY | 10001 | | 212-530-5000 | 212-530-5219 | guzzi@milbank.com estodola@milbank.com alees@milbank.com |
| Counsel to The Missouri Department of Revenue | Missouri Department of Revenue | Attn: Steven A. Ginther - Special Assistant AG | 301 W. High Street, Room 670 | P.O. Box 475 | Jefferson City | MO | 65105-0475 | | 573-751-5531 | 573-751-7232 | sdnyecf@dor.mo.gov |
| Counsel to Ronald D. Stracener, F. Kirk Hopkins, Jordan Chu, Amel Eiland, Nadja Streiter, Michael Konig, Eli Medina, Barbara Rivers, Marketing Services of Indiana, Inc., Glenn Golden, Gretta Golden, Michael Christy, Edward Grace, Debra Dawsey, Darcy Sherman, Kimberly Brand, Lou Sardella, Michael Klodzinski, Kevin Wilk, Heather Enders, Jason Reynolds, MSI Corporation, Deborah Green-Kuchta, W. Andrew Fox, Dora Lawrence, Michael Lopez, Zachary R. Schneider, and the Putative Classes | Morgan & Morgan | Attn: James Young | 76 South Laura Street, Suite 1100 | | Jacksonville | FL | 32202 | | 904-361-0012 | 904-361-4307 | jyoung@forthepeople.com |
| Counsel to Ronald D. Stracener, F. Kirk Hopkins, Jordan Chu, Amel Eiland, Nadja Streiter, Michael Konig, Eli Medina, Barbara Rivers, Marketing Services of Indiana, Inc., Glenn Golden, Gretta Golden, Michael Christy, Edward Grace, Debra Dawsey, Darcy Sherman, Kimberly Brand, Lou Sardella, Michael Klodzinski, Kevin Wilk, Heather Enders, Jason Reynolds, MSI Corporation, Deborah Green-Kuchta, W. Andrew Fox, Dora Lawrence, Michael Lopez, Zachary R. Schneider, and the Putative Classes | Morgan & Morgan | Attn: Juan R. Martin | 201 North Franklin Street, 7th Floor | | Tampa | FL | 33602 | | 813-393-5463 | 813-393-5489 | juanmartinez@forthepeople.com |
| State Attorney General | National Association of Attorneys General | Attn: Karen Cordry | 1850 M St., NW 12th Floor | | Washington | DC | 20036 | | 202-326-6025 | 202-331-1427 | kcordry@naag.org |
| Counsel to New York State Department of Financial Services | New York State Department of Financial Services | Attn: Nicolas G. Keller - Assistant Counsel | One State Street | | New York | NY | 10004 | | 212-480-4668 | | nicolas.keller@dfs.ny.gov |
| Counsel to State of Indiana | Office of the Indiana Attorney General | Attn: Heather M. Crockett, Amanda K. Quick, Curtis T. Hill Jr. | 302 West Washington Street | Indiana Govt. Center South, 5th Floor | Indianapolis | IN | 46204-2770 | | 317-233-6254 | 317-232-7979 | Heather.Crockett@atg.in.gov |
| State Attorney General | Office of the New Jersey State Attorney General | Attn: Lara J. Fogel, Deputy AG | 124 Halsey Street, 5th Floor | P.O. Box 45029-5029 | Newark | NJ | 07101 | | 973-648-2865 | | lara.fogel@law.njoag.gov |
| Counsel to Opioids and Impact Litigation | Office of the New York State Attorney General | Attn: David E. Nachman | Executive Division | 28 Liberty Street | New York | NY | 10005 | | 212-416-8390 | | David.Nachman@ag.ny.gov |
| State Attorney General | Office of the New York State Attorney General | Attn: Kathryn J. Blake, Assistant AG | Section Chief, General Recoveries Bureau | The Capitol | Albany | NY | 12224-0341 | | 518-776-2232 | | Kathryn.Blake@ag.ny.gov |
| State Attorney General, Counsel to Counsel for Opioids and Impact Litigation | Office of the New York State Attorney General | Attn: Muhammad Umair Khan | 28 Liberty Street | | New York | NY | 10005 | | 212-416-6685 | | Umair.Khan@ag.ny.gov |
| Counsel to the State of South Carolina | Office of the South Carolina Attorney General | Attn: Annemarie B. Mathews - Assistant AG | P.O. Box 11549 | | Columbia | SC | 29211-1549 | | 803-734-3679 | 803-734-0097 | amathews@scag.gov |
| Counsel to the State of South Carolina | Office of the South Carolina Attorney General | Attn: Jared Q. Libet - Assistant Deputy AG | P.O. Box 11549 | | Columbia | SC | 29211-1549 | | 803-734-5251 | 803-734-0097 | jlibet@scag.gov |
| State Attorney General | Office of the State of Connecticut Attorney General | Attn: Denise S. Mondell, Assistant AG | 55 Elm Street, P.O. Box 120 | | Hartford | CT | 06141-0120 | | 860-808-5150 | 860-808-5385 | Denise.Mondell@ct.gov |
| State Attorney General | Office of the State of Idaho Attorney General | Attn: Brett T. DeLange - Deputy AG Chief, Consumer Protection Division | Office of the AG | | Boise | ID | 83720-0010 | | 208-334-2400 | | brett.delange@ag.idaho.gov |
| State Attorney General | Office of the State of Iowa Attorney General | Attn: William R. Pearson - Assistant AG | Hoover Building, 2nd Floor | 1305 E. Walnut Street | Des Moines | IA | 50312 | | 515-242-6773 | 515-281-6771 | william.pearson@ag.iowa.gov |
| State Attorney General | Office of the State of Vermont Attorney General | Attn: Jill S. Abrams | Vermont Attorney General's Office | 109 State Street | Montpelier | VT | 05403 | | 802-828-1106 | | Jill.abrams@vermont.gov |
| Office of The United States Trustee | Office of the United States Trustee | Attn: Paul Schwartzberg | U.S. Federal Office Building | 201 Varick Street, Suite 1006 | New York | NY | 10014 | | 212-510-0500 ext. 221 | 212-668-2361 | paul.schwartzberg@usdoj.gov |
| Counsel to Ohio Attorney General | Ohio Attorney General | Attn: Alison L. Archer, Assistant AG | Ohio AG's Office | 615 W. Superior Avenue, 11th Floor | Cleveland | OH | 44113 | | 216-787-4721 | 866-416-9729 | Alison.Archer@ohioattorneygeneral.gov |

In re: Purdue Pharma L.P., *et al.*
Master Service List
Case No. 19-23649 (RDD)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Counsel to Ohio Attorney General | Ohio Attorney General | Attn: Patricia B. Lazich, Assistant AG | Ohio AG's Office | 615 W. Superior Avenue, 11th Floor | Cleveland | OH | 44113 | | 216-787-3180 | 866-437-9074 | Trish.Lazich@ohioattorneygeneral.gov |
| Counsel to the State of Texas | Otterbourg P.C. | Attn: Melanie L. Cyganowski, Esq. & Jennifer S. Feeney | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | mcyganowski@otterbourg.com jfeeney@otterbourg.com |
| Counsel to Commonwealth of Pennsylvania | Pennsylvania Office of Attorney General | Attn: Melissa L. Van Eck - Senior Deputy AG | Strawberry Square, 15th Floor | | Harrisburg | PA | 17120 | | 717-787-5176 | | mvaneck@attorneygeneral.gov |
| Committee of Unsecured Creditors | Pension Benefit Guaranty Corporation | Attn: Adi Berger, Director | 1200 K Street, NW | | Washington | DC | 20005 | | 202-326-4000 | | |
| Counsel to the Ad Hoc Group of Non-Consenting States | Pillsbury Winthrop Shaw Pittman LLP | Attn: Andrew M. Troop and Andrew V. Alfano | 31 West 52nd Street | | New York | NY | 10019 | | 212-858-1000 | | andrew.troop@pillsburylaw.com andrew.alfano@pillsburylaw.com |
| Counsel to the Ad Hoc Group of Non-Consenting States | Pillsbury Winthrop Shaw Pittman LLP | Attn: Jason S. Sharp | 2 Houston Center | 909 Fannin, Suite 2000 | Houston | TX | 77010 | | 713-276-7600 | | jason.sharp@pillsburylaw.com |
| Claims and Noticing Attorney Generalent | Prime Clerk, LLC | Attn: Herb Baer | One Grand Central Place | 60 East 42nd Street, Suite 1440 | New York | NY | 10165 | | 212-257-5450 | 646-328-2851 | purduepharmateam@primeclerk.com serviceqa@primeclerk.com |
| Debtors | Purdue Pharma L.P. | Attn: President or General Counsel | One Stamford Forum, 201 Tresser Boulevard | | Stamford | CT | 06901 | | | | |
| Counsel to Blue Cross Blue Shield Association | RAWLINGS & ASSOCIATES | Attn: Mark D. Fischer | 1 Eden Parkway | | La Grange | KY | 40031 | | 502-814-2139 | | mdf@rawlingsandassociates.com |
| Counsel to AmerisourceBergen Drug Corporation | Reed Smith LLP | Attn: Christopher A. Lynch | 599 Lexington Avenue | | New York | NY | 10022-7650 | | 212-521-5400 | 212-521-5450 | clynch@reedsmith.com |
| Counsel to AmerisourceBergen Drug Corporation | Reed Smith LLP | Attn: Claudia Z. Springer | Three Logan Square | 1717 Arch Street, Suite 3100 | Philadelphia | PA | 19103 | | 215-851-8100 | 215-851-1420 | cspringer@reedsmith.com |
| Counsel to Consortium of Some Massachusetts Municipalities | Scott+Scott Attorneys at Law LLP | Attn: Beth Kaswan and Judith S. Scolnick | The Helmsley Building | 230 Park Avenue, 17th Floor | New York | NY | 10169 | | 212-223-6444 | | bkaswan@scott-scott.com jscolnick@scott-scott.com |
| State Attorney General | State of Alabama Attorney General | Attn: Bankruptcy Department | P.O. Box 300152 | | Montgomery | AL | 36130-0152 | | 334-242-7300 | 334-242-2433 | |
| State Attorney General | State of Alaska Attorney General | Attn: Bankruptcy Department | P.O. Box 110300 | | Juneau | AK | 99811-0300 | | 907-465-2133 | 907-465-2075 | attorney.general@alaska.gov |
| State Attorney General | State of Arizona Attorney General | Attn: Bankruptcy Department | 2005 N Central Ave | | Phoenix | AZ | 85004-2926 | | 602-542-5025 | 602-542-4085 | aginfo@azag.gov |
| State Attorney General | State of Arkansas Attorney General | Attn: Bankruptcy Department | 323 Center St. | Suite 200 | Little Rock | AR | 72201-2610 | | 501-682-2007; 800-482-8982 | 501-682-8084 | |
| State Attorney General | State of California Attorney General | Attn: Bankruptcy Department | P.O. Box 944255 | | Sacramento | CA | 94244-2550 | | 916-445-9555 | 916-323-5341 | bankruptcy@coag.gov |
| State Attorney General | State of Colorado Attorney General | Attn: Bankruptcy Department | Ralph L. Carr Colorado Judicial Center | 1300 Broadway, 10th Floor | Denver | CO | 80203 | | 720-508-6000 | 720-508-6030 | |
| State Attorney General | State of Connecticut Attorney General | Attn: Bankruptcy Department | 55 Elm St. | | Hartford | CT | 06106 | | 860-808-5318 | 860-808-5387 | attorney.general@po.state.ct.us |
| State Attorney General | State of Delaware Attorney General | Attn: Bankruptcy Department | Carvel State Office Bldg. | 820 N. French St. | Wilmington | DE | 19801 | | 302-577-8338 | 302-577-6630 | Attorney.General@state.DE.US |
| State Attorney General | State of Florida Attorney General | Attn: Bankruptcy Department | The Capitol, PL 01 | | Tallahassee | FL | 32399-1050 | | 850-414-3300 | 850-488-4872 | |
| State Attorney General | State of Georgia Attorney General | Attn: Bankruptcy Department | 40 Capital Square, SW | | Atlanta | GA | 30334-1300 | | 404-656-3300 | 404-657-8733 | |
| State Attorney General | State of Hawaii Attorney General | Attn: Bankruptcy Department | 425 Queen St. | | Honolulu | HI | 96813 | | 808-586-1500 | 808-586-1239 | hawaiiag@hawaii.gov |
| State Attorney General | State of Idaho Attorney General | Attn: Bankruptcy Department | 700 W. Jefferson Street | P.O. Box 83720 | Boise | ID | 83720-1000 | | 208-334-2400 | 208-854-8071 | |
| State Attorney General | State of Illinois Attorney General | Attn: Bankruptcy Department | 100 West Randolph Street | | Chicago | IL | 60601 | | 312-814-3000 | | webmaster@atg.state.il.us |
| State Attorney General | State of Indiana Attorney General | Attn: Bankruptcy Department | Indiana Government Center South | 302 W. Washington St., 5th Floor | Indianapolis | IN | 46204 | | 317-232-6201 | 317-232-7979 | |
| State Attorney General | State of Iowa Attorney General | Attn: Bankruptcy Department | 1305 E. Walnut Street | | Des Moines | IA | 50319 | | 515-281-5164 | 515-281-4209 | |
| State Attorney General | State of Kansas Attorney General | Attn: Bankruptcy Department | 120 SW 10th Ave., 2nd Floor | | Topeka | KS | 66612-1597 | | 785-296-2215; 888-428-8436 | 785-296-6296 | |
| State Attorney General | State of Kentucky Attorney General | Attn: Bankruptcy Department | 700 Capitol Avenue, Suite 118 | | Frankfort | KY | 40601 | | 502-696-5300 | 502-564-2894 | |
| State Attorney General | State of Louisiana Attorney General | Attn: Bankruptcy Department | P.O. Box 94095 | | Baton Rouge | LA | 70804-4095 | | 225-326-6000 | 225-326-6499 | ConsumerInfo@ag.state.la.us |
| State Attorney General | State of Maine Attorney General | Attn: Bankruptcy Department | 6 State House Station | | Augusta | ME | 04333 | | 207-626-8800 | | consumer.mediation@maine.gov |
| State Attorney General | State of Maryland Attorney General | Attn: Bankruptcy Department | 200 St. Paul Place | | Baltimore | MD | 21202-2202 | | 410-576-6300 | | oag@oag.state.md.us |
| State Attorney General | State of Massachusetts Attorney General | Attn: Bankruptcy Department | One Ashburton Place | | Boston | MA | 02108-1698 | | 617-727-2200 | | ago@state.ma.us |
| State Attorney General | State of Michigan Attorney General | Attn: Bankruptcy Department | G. Mennen Williams Building, 7th Floor | 525 W. Ottawa St., P.O. Box 30212 | Lansing | MI | 48909-0212 | | 517-373-1110 | 517-373-3042 | miag@michigan.gov |

In re: Purdue Pharma L.P., *et al.*
Master Service List
Case No. 19-23649 (RDD)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| State Attorney General | State of Minnesota Attorney General | Attn: Bankruptcy Department | 1400 Bremer Tower | 445 Minnesota Street | St. Paul | MN | 55101-2131 | | 651-296-3353; 800-657-3787 | | Attorney.General@ag.state.mn.us |
| State Attorney General | State of Mississippi Attorney General | Attn: Bankruptcy Department | Walter Sillers Building | 550 High Street, Suite 1200, P.O. Box 220 | Jackson | MS | 39201 | | 601-359-3680 | | |
| State Attorney General | State of Missouri Attorney General | Attn: Bankruptcy Department | Supreme Court Building | 207 W. High St. | Jefferson City | MO | 65102 | | 573-751-3321 | 573-751-0774 | attorney.general@ago.mo.gov |
| State Attorney General | State of Montana Attorney General | Attn: Bankruptcy Department | 215 N Sanders, Third Floor | P.O. BOX 201401 | Helena | MT | 59620-1401 | | 406-444-2026 | 406-444-3549 | contactdoj@mt.gov |
| State Attorney General | State of Nebraska Attorney General | Attn: Bankruptcy Department | 2115 State Capitol | 2nd Fl, Rm 2115 | Lincoln | NE | 68509-8920 | | 402-471-2683 | 402-471-3297 | ago.info.help@nebraska.gov |
| State Attorney General | State of Nevada Attorney General | Attn: Bankruptcy Department | 100 North Carson Street | | Carson City | NV | 89701 | | 775-684-1100 | 775-684-1108 | |
| State Attorney General | State of New Hampshire Attorney General | Attn: Bankruptcy Department | 33 Capitol St. | | Concord | NH | 03301 | | 603-271-3658 | 603-271-2110 | attorneygeneral@doj.nh.gov |
| State Attorney General | State of New Jersey Attorney General | Attn: Bankruptcy Department | RJ Hughes Justice Complex | 25 Market Street, P.O. Box 080 | Trenton | NJ | 08625-0080 | | 609-292-4925 | 609-292-3508 | askconsumeraffairs@lps.state.nj.us |
| State Attorney General | State of New Mexico Attorney General | Attn: Bankruptcy Department | P.O. Drawer 1508 | | Santa Fe | NM | 87504-1508 | | 505-827-6000 | 505-827-5826 | |
| State Attorney General | State of New York Attorney General | Attn: Louis J. Testa | Bankruptcy Litigation Unit | The Capitol | Albany | NY | 12224-0341 | | 518-776-2000 | 866-413-1069 | Louis.Testa@ag.ny.gov |
| State Attorney General | State of North Carolina Attorney General | Attn: Jessica Sutton | 9001 Mail Service Center | | Raleigh | NC | 27699-9001 | | 919-716-0998 | 919-716-6050 | jsutton2@ncdoj.gov |
| State Attorney General | State of North Dakota Attorney General | Attn: Bankruptcy Department | State Capitol | 600 E Boulevard Ave Dept 125 | Bismarck | ND | 58505-0040 | | 701-328-2210 | 701-328-2226 | ndag@nd.gov |
| State Attorney General | State of Ohio Attorney General | Attn: Bankruptcy Department | 30 E. Broad St., 14th Floor | | Columbus | OH | 43215 | | 800-282-0515 | | |
| State Attorney General | State of Oklahoma Attorney General | Attn: Bankruptcy Department | 313 NE 21st Street | | Oklahoma City | OK | 73105 | | 405-521-3921 | 405-521-6246 | |
| State Attorney General | State of Oregon Attorney General | Attn: Bankruptcy Department | 1162 Court Street NE | | Salem | OR | 97301 | | 503-378-4400 | 503-378-4017 | consumer.hotline@doj.state.or.us |
| State Attorney General | State of Pennsylvania Attorney General | Attn: Bankruptcy Department | Strawberry Square | 16th Floor | Harrisburg | PA | 17120 | | 717-787-3391 | 717-787-3391 | |
| State Attorney General | State of Rhode Island Attorney General | Attn: Bankruptcy Department | 150 South Main Street | | Providence | RI | 02903 | | 401-274-4400 | | |
| State Attorney General | State of South Carolina Attorney General | Attn: Bankruptcy Department | P.O. Box 11549 | | Columbia | SC | 29211-1549 | | 803-734-3970 | | |
| State Attorney General | State of South Dakota Attorney General | Attn: Bankruptcy Department | 1302 East Highway 14 | Suite 1 | Pierre | SD | 57501-8501 | | 605-773-3215 | 605-773-4106 | consumerhelp@state.sd.us |
| State Attorney General | State of Tennessee Attorney General | Attn: Bankruptcy Department | P.O. Box 20207 | | Nashville | TN | 37202-0207 | | 615-741-3491 | 615-741-2009 | reg.boards@tn.gov |
| Counsel to the State of Texas | State of Texas | Attn: Paul L. Singer, Esq. | Chief, Consumer Protection Division MC 009 | P.O. Box 12548 | Austin | TX | 78711-2548 | | 512-463-2185 | | paul.singer@oag.texas.gov |
| Counsel to the State of Texas | State of Texas | Attn: Rachel R. Obaldo, Esq. | Bankruptcy & Collections Division MC 008 | P.O. Box 12548 | Austin | TX | 78711-2548 | | 512-475- 4551 | 512-936-1409 | bk-robaldo@oag.texas.gov |
| State Attorney General | State of Texas Attorney General | Attn: Bankruptcy Department | Capitol Station | P.O. Box 12548 | Austin | TX | 78711-2548 | | 512-475-4868 | 512-475-2994 | public.information@oag.state.tx.us |
| State Attorney General | State of Utah Attorney General | Attn: Bankruptcy Department | P.O. Box 142320 | | Salt Lake City | UT | 84114-2320 | | 801-538-9600 | 801-538-1121 | uag@utah.gov |
| State Attorney General | State of Vermont Attorney General | Attn: Bankruptcy Department | 109 State St. | | Montpelier | VT | 05609-1001 | | 802 828-3171 | 802-304-1014 | ago.info@vermont.gov |
| State Attorney General | State of Virginia Attorney General | Attn: Bankruptcy Department | 900 East Main Street | | Richmond | VA | 23219 | | 804-786-2071 | 804-225-4378 | |
| State Attorney General | State of Washington Attorney General | Attn: Bankruptcy Department | 1125 Washington St. SE | P.O. Box 40100 | Olympia | WA | 98504-0100 | | 360-753-6200 | | |
| State Attorney General | State of West Virginia Attorney General | Attn: Abby Cunningham, Assistant AG for West Virginia | State Capitol Bldg 1 Room E 26 | | Charleston | WV | 25305 | | 304-558-2021 | 304-558-0140 | Abby.G.Cunningham@wvago.gov |
| State Attorney General | State of Wisconsin Attorney General | Attn: Bankruptcy Department | Wisconsin Department of Justice | State Capitol, Room 114 East, P.O. Box 7857 | Madison | WI | 53707-7857 | | 608-266-1221 | 608-267-2223 | |
| State Attorney General | State of Wyoming Attorney General | Attn: Bankruptcy Department | 123 Capitol Building | 200 W. 24th Street | Cheyenne | WY | 82002 | | 307-777-7841 | 307-777-6869 | |

In re: Purdue Pharma L.P., *et al.*
Master Service List
Case No. 19-23649 (RDD)

| DESCRIPTION | NAME | NOTICE NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Counsel to Ronald D. Stracener, F. Kirk Hopkins, Jordan Chu, Amel Eiland, Nadja Streiter, Michael Konig, Eli Medina, Barbara Rivers, Marketing Services of Indiana, Inc., Glenn Golden, Gretta Golden, Michael Christy, Edward Grace, Debra Dawsey, Darcy Sherman, Kimberly Brand, Lou Sardella, Michael Klodzinski, Kevin Wilk, Heather Enders, Jason Reynolds, MSI Corporation, Deborah Green-Kuchta, W. Andrew Fox, Dora Lawrence, Michael Lopez, Zachary R. Schneider, and the Putative Classes | Stevens & Lee, P.C. | Attn: Nicholas F. Kajon and Constantine D. Pourakis | 485 Madison Avenue, 20th Floor | | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | nfk@stevenslee.com cp@stevenslee.com |
| Counsel to Certain Native American Tribes, Health Organizations, Municipalities and Unions | Stutzman, Bromberg, Esserman & Plifka, a Professional Corporation | Attn: Sander L. Esserman and Peter C. D'Apice | 2323 Bryan Street, Suite 2200 | | Dallas | TX | 75201 | | 214-969-4900 | 214-969-4999 | esserman@sbep-law.com dapice@sbep-law.com |
| Counsel to Community Health Systems, Inc., Tenet Healthcare Corporation, and Infirmary Health System, Inc., And Class of approximately 384 hospitals on Exhibit A | Teitelbaum Law Group, LLC | Attn: Jay Teitelbaum, Esq. | 1 Barker Avenue, 3rd Floor | | White Plains | NY | 10601 | | 914-437-7670 | | jteitelbaum@tblawllp.com |
| State of Tennessee | Tennessee Attorney General's Office | Attn: Marvin Clements, Bankruptcy Division | P.O. Box 20207 | | Nashville | TN | 37202-0207 | | 615-741-3491 | 615-741-3334 | Marvin.Clements@ag.tn.gov |
| Counsel to Thermo Fisher Scientific | Tucker Arensberg, P.C. | Attn: Jordan S. Blask, Esq. | 1500 One PPG Place | | Pittsburgh | PA | 15222 | | 412-566-1212 | 412-594-5619 | jblask@tuckerlaw.com |
| Top 3 Largest Secured Creditor | U.S. Bank Equipment Finance | Attn: President or General Counsel | 1310 Madrid Street | | Marshall | MN | 56258 | | | | |
| United States Department of Justice | U.S. Department of Justice | Attn: Legal Department | 950 Pennsylvania Avenue, NW | | Washington | DC | 20530-0001 | | | | |
| United States Attorney's Office for the Southern District of New York | United States Attorney's Office | Attn: U.S. Attorney | 300 Quarropas Street, Room 248 | | White Plains | NY | 10601-4150 | | 914-993-1900 | | |
| Counsel to the State of North Carolina | Waldrep LLP | Attn: Thomas W. Waldrep, Jr., James C. Lanik, Jennifer B. Lyday | 101 S. Stratford Road, Suite 210 | | Winston-Salem | NC | 27104 | | 336-717-1440; 336-717-1280 | 336-717-1340 | twaldrep@waldrepllp.com jlyday@waldrepllp.com jlanik@waldrepllp.com |
| State Attorney General | Washington DC Attorney General | Attn: Bankruptcy Department | 441 4th Street, NW | | Washington | DC | 20001 | | 202-727-3400 | 202-347-8922 | |
| Committee of Unsecured Creditors | West Boca Medical Center | Attn: Paige Kesman, Assistant General Counsel | 21644 Florida Highway | | Boca Raton | FL | 33428 | | 496-892-2000 | | |
| Counsel to the State of Alabama | Wilk Auslander LLP | Attn: Eric J. Snyder | 1515 Broadway, 43rd Floor | | New York | NY | 10036 | | 212-981- 2300 | 212-752-6380 | esnyder@wilkauslander.com |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |
| **PURDUE PHARMA L.P.,** *et al.*, | |
| Plaintiffs, | **Adv. Pro. No. 19-08289** |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS,** *et al.*, | |
| Defendants. | |

## SECOND AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) GRANTING MOTION FOR A PRELIMINARY INJUNCTION

Upon the motion, dated September 18, 2019 ("**Motion**"), of Purdue Pharma L.P. and

certain affiliated debtors, as debtors and debtors in possession (collectively, "**Debtors**"), which

are plaintiffs in this adversary proceeding, for an order pursuant to section § 105(a) of title 11 of

the United States Code ("**Bankruptcy Code**") and Rule 7065 of the Federal Rules of Bankruptcy

Procedure ("**Bankruptcy Rules**"), to (i) enjoin the governmental defendants in this adversary

proceeding ("**Governmental Defendants**") from the commencement or continuation of their

active judicial, administrative, or other actions or proceedings against the Debtors that were or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

could have been commenced before the commencement of the case ("**Governmental Actions**"),

which are identified in Exhibit A to the Complaint, as well as the commencement or continuation

of any other actions against the Debtors alleging substantially similar facts or causes of action as

those alleged in the Governmental Actions, and (ii) enjoin the Governmental Defendants and the

private defendants ("**Private Defendants**") in this adversary proceeding from the

commencement or continuation of their active judicial, administrative, or other actions or

proceedings, identified in Exhibit B to the Complaint, and the commencement or continuation of

other actions alleging substantially similar facts or causes of action as those alleged in the actions

identified in Exhibit A or Exhibit B to the Complaint, against former or current (a) owners

(including any trusts and their respective trustees and beneficiaries), (b) directors, (c) officers,

(d) employees, and (e) other similar associated entities of the Debtors that were or could have

been commenced before the commencement of the case ("**Related Parties**," as identified in

Exhibit B to the Complaint,[2] and the claims against them described in this paragraph, the

---

[2] The Related Parties identified in Exhibit B to the Complaint are: The Purdue Frederick
Company Inc.; The P.F. Laboratories Inc.; Purdue Pharma Technologies Inc.; PLP Associates
Holdings L.P.; PLP Associates Holdings Inc.; BR Holdings Associates L.P.; BR Holdings
Associates Inc.; Rosebay Medical Company L.P.; Rosebay Medical Company, Inc.; Beacon
Company; PRA Holdings Inc.; Pharmaceutical Research Associates Inc.; Purdue Holdings L.P.;
Rhodes Pharmaceuticals Inc.; Rhodes Technologies Inc.; Coventry Technologies L.P.; MNP
Consulting Limited; Richard S. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A.
Sackler; Ilene Sackler Lefcourt; Beverly Sackler; Theresa Sackler; David A. Sackler; Estate of
Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of Members of the
Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S. Sackler, and
Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964; Beverly
Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated
November 5, 1974; Paulo Costa; Cecil Pickett; Ralph Snyderman; Judith Lewent; Craig Landau;
Mark Timney; Stuart D. Baker; Frank Peter Boer; John Stewart; Russell Gasdia; Marv Kelly;
Shelli Liston; Heather Weaver; Doug Powers; Lori Fuller; Rodney Davis; Brandon Worley;
Donald Leathers; Wendy Kay; Michael Madden; LeAvis Sullivan; Jeffrey Ward; Beth Taylor;
Leigh Varnadore; Paul Kitchin; Mark Waldrop; Mark Radcliffe; Mark Ross; Patty Carnes; Carol
Debord; Jeff Waugh; Shane Cook; James David Haddox; Aida Maxsam; Tessa Rios; Amy K.
Thompson; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca Sterling; Vanessa

"**Related-Party Claims**"); and the Court having jurisdiction to decide the Motion and the relief

requested therein under 28 U.S.C. §§ 157(a)-(b) and 1334(b); and there being due and sufficient

notice of the Motion; and the Court having reviewed the Complaint, the Motion, the Debtors'

brief in support of the Motion, the declarations in support of the Motion, and other evidence and

argument submitted by the Debtors in support thereof; all pleadings filed in support of the

Motion; and all objections filed in opposition or partial opposition to the Motion, as well as all

filed letters in response to the Motion; and upon the record of and representations made at the

hearing held by the Court on the Motion's request for entry of a preliminary injunction on

October 11, 2019 (the "**October 11 Hearing**") and at the hearing held on November 6, 2019 (the

"**November 6 Hearing**," together with the October 11 Hearing, the "**Hearings**"); and, after due

deliberation and for the reasons set forth on the record by the Court at the Hearings, good and

sufficient cause appearing having entered Orders on October 11, 2019 granting the Motion in

part and on October 18, 2019 amending such Order; and such Orders having contemplated a

procedure to amend the Orders further; and good and sufficient cause appearing to amend such

Orders as provided herein, the Court grants the Debtors' request to amend the Orders as provided

in this Amended Order, which amends and supersedes the Court's prior Orders.  Now, therefore,

the Court finds and concludes as follows:

       (a)     The Plaintiffs in these adversary proceedings are the Debtors.  The

Defendants in this adversary proceeding are the Governmental Defendants and the

Private Defendants, which are listed in the caption to the Complaint and in the

"Underlying Plaintiffs" column of Exhibit A and Exhibit B to the Complaint, with such

Exhibits being made a part of and incorporated in this Order.  The Defendants in this

---

Weatherspoon; Chris Hargrove; Brandon Hassenfuss; Joe Read; and Andrew T. Stokes.

adversary proceeding are all plaintiffs in judicial, administrative, or other actions or

proceedings that seek to hold the Debtors and/or the Related Parties, as identified in

Exhibit B, liable in connection with claims and/or causes of action arising out of or

otherwise related to the Debtors' prescription opioid business.

(b)    The Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157(a)-(b) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

(c)    The Debtors have demonstrated that the continuation of the active

litigation against them and the Related Parties, identified in Exhibits A and B to the

Complaint, respectively, would result in irreparable harm to the Debtors and their

reorganization.

(d)    The representatives of the Raymond Sackler family and of the Mortimer

Sackler family (collectively, the "**Sackler Families**") agreed on the record at the October

11 Hearing to toll all applicable statutes of limitations and similar time limits on the

commencement of Additional Actions against any member of the Sackler Families, and

to treat as inoperative all deadlines (including deadlines for appeals) in any currently

pending Related Party Claim against any member of the Sackler Families, for the

duration of this preliminary injunction.

(e)    Accordingly, this Court finds it appropriate to enter a preliminary

injunction as provided herein pursuant to section § 105(a) of the Bankruptcy Code and

Rule 7065 of the Bankruptcy Rules.

(f)    The legal and factual bases set forth in the Complaint, the Motion, the

Brief, other supporting papers, and at the Hearings establish just cause for the relief

granted herein.

Based on these findings, it is hereby:

ORDERED, that the Governmental Defendants and the Private Defendants are prohibited and enjoined[3] from (i) the commencement or continuation of their active judicial, administrative, or other actions or proceedings against the Debtors and/or Related Parties that were or could have been commenced before the commencement of the case under this title against the Debtors and/or the Related Parties arising from or in any way relating to the Debtors' prescription opioid business, including the actions reflected in the attached Exhibit A and Exhibit B, as well as (ii) from commencing or continuing any other actions against the Debtors or Related Parties alleging substantially similar facts or causes of action as those alleged in actions reflected in the attached Exhibit A and Exhibit B, in each case through and including Wednesday, April 8, 2020. The preliminary injunction period may be extended by further order of the Court.

ORDERED, that the Debtors in these chapter 11 cases shall be subject to the Voluntary Injunction annexed hereto as Appendix 1.

ORDERED, that the Debtors need not give security in connection with this injunctive relief.

ORDERED, that this Order shall be promptly filed in the Clerk's Office and entered into the record.

ORDERED, that the Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

---

[3] Based upon the representations of counsel at the November 6 Hearing, the following entities are not enjoined pursuant to this Order, but voluntarily consent fully to abide by the terms of this Order until December 19, 2019: Arizona, the Ad Hoc Group of Non-Consenting States [Docket No. 296] and each of its members, and the Multi-State Governmental Entities Group [Docket No. 409] and each of its members (collectively, "**Potential Opt-out Parties**").  As discussed on the record at the November 6 Hearing, the Potential Opt-out Parties will promptly confer with counsel for the Debtors with respect to a consensual agreement regarding the time subsequent to December 19, 2019 to avoid being enjoined on and after the date on a further consensual basis.  For the avoidance of doubt, any failure to appeal this Order by an Potential Opt-out Party shall not prejudice the ability of such party to appeal any subsequent Order related to the subject matter of the Motion.

ORDERED, that nothing in this Order shall prevent the Debtors from seeking a further

extension of the requested injunction.

ORDERED, that if, while the preliminary injunction provided for in this Order is

effective, either (i) any inactive litigation currently pending against the Debtors or Related

Parties becomes active, or (ii) any new action is commenced against the Debtors or Related

Parties (in either case, an "**Additional Action**"), the Debtors may promptly serve the plaintiff or

plaintiffs in such Additional Action ("**Applicable Plaintiff**") with a copy of the Complaint, the

Motion, the Debtors' memorandum of law in support of the Motion, and this Order (the

"**Service Documents**").  The Debtors shall file a notice of such service on the docket promptly

after service.  If the Applicable Plaintiff in such Additional Action does not file and serve an

objection within seven (7) days of service of the Service Documents, the Court may determine

whether such Additional Action should be enjoined pursuant to this Order without further

proceedings.  If the Applicable Plaintiff files and serves an objection, the Debtors shall have the

right to file and serve a response to the objection within seven (7) days of service of the

objection, after which the Court may determine whether such Additional Action should be

enjoined pursuant to this Order without further proceedings, or either party may seek to

schedule and provide notice of a hearing.

ORDERED, that all applicable statutes of limitations and similar time limits on the

commencement of Additional Actions, and all deadlines (including deadlines for appeals) in

any currently pending Governmental Action or Related Party Claim (including as agreed on the

record at the Hearing by the representatives of the Sackler Families), shall be tolled or

otherwise inoperative for the duration of this preliminary injunction.  This is without prejudice

to any party's rights to assert that any currently pending Governmental Action or Related Party

Claim is time barred, or that commencement of any Additional Action, or any other action taken

by a party with respect to any Governmental Action or Related Party Claim after the entry of

this Order would have been time barred or untimely had it been commenced or taken before the

entry of this Order.

ORDERED, that nothing in this Order shall affect or abrogate the automatic stay as to the

Debtors under section 362 of the Bankruptcy Code.

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: White Plains, New York
       November 6, 2019

4:00 p.m.


/s/ Robert D. Drain_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## <u>Appendix 1</u>

**Voluntary Injunction**

# I.     DEFINITIONS

A.    "Bankruptcy Court" or "Court" shall mean the court presiding over the chapter 11 proceedings *In re Purdue Pharma L.P. et al.*, Case No. 19-23649-RDD (S.D.N.Y.).

B.    "Cancer-Related Pain Care" shall mean care that provides relief from pain caused by active cancer or ongoing cancer treatment, as distinguished from treatment provided during remission.

C.     "CDC Guideline Recommendations" shall mean the 12 enumerated Recommendations published by the U.S. Centers for Disease Control and Prevention (CDC) for the prescribing of opioid pain medication for patients 18 and older in primary care settings as part of its 2016 Guideline for Prescribing Opioids for Chronic Pain (CDC Guidelines), as updated or amended by the CDC.

D.    "Company" shall mean the Debtors as defined in these chapter 11 proceedings *In re Purdue Pharma L.P. et al.*, Case No. 19-23649-RDD (S.D.N.Y.).

E.    "Direct Customer Data" shall mean transaction information that the Company collects relating to the Company's direct customers' orders, including direct customer's wholesale orders, order history, and customer files.

F.    "Downstream Customer Data" shall mean transaction information that the Company collects relating to the Company's direct customers' sales to downstream customers, including chargeback data tied to the Company providing certain discounts, "867 data," and IQVIA data.

G.    "End-of-Life Care" shall mean care for persons with a terminal illness or at high risk for dying in the near future in hospice care, hospitals, long-term care settings, or at home.

H.    "Health Care Provider" shall mean any U.S.-based physician, nurse practitioner, physician assistant, dentist, pharmacist, podiatrist, nurse, or other person engaged in the business of providing health care services and/or prescribing an Opioid Product and any medical facility, practice, hospital, clinic, or pharmacy engaged in providing health care services and/or prescribing an Opioid Product in the United States.

I.     "Including but not limited to," when followed by a list or examples, shall mean that list or examples are illustrative instances only and shall not be read to be restrictive.

J.    "In-Kind Support" shall mean payment or assistance in the form of goods, commodities, services, or anything else of value.

K.    "Initial Covered Sackler Persons" shall mean the Estate of Beverly Sackler, David A. Sackler, Ilene Sackler, Jonathan D. Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard S. Sackler, Theresa Sackler, any trusts of which any of the foregoing are beneficiaries, and the trustees thereof (solely in their capacities as such), each Shareholder Party and each other entity or person that directly or indirectly owns equity in, or has voting control over, any of the Debtors, and in the event of the death of an

9

Initial Covered Sackler Person who is a natural person, other than a natural person who is an Initial Covered Sackler Person solely in the capacity as a trustee, the estate of such person.

L.    "Lobby" and "Lobbying" shall have the same meaning as such terms have under U.S. federal law and the law governing the person or entity being lobbied.

M.    "Opioid(s)" shall mean all natural, semi-synthetic, or synthetic chemicals that interact with opioid receptors on nerve cells in the body and brain.  The term "Opioids" shall not mean (i) methadone, buprenorphine, buprenorphine/naloxone (oral/sublingual), suboxone, and other substances when used exclusively to treat opioid or other substance use disorders, abuse, addiction, or overdose; (ii) raw materials and/or immediate precursors used in the manufacture or study of Opioids or Opioid Products, but only when such materials and/or immediate precursors are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers; or (iii) Opioids listed by the DEA as Schedule IV drugs pursuant to the federal Controlled Substances Act.

N.    "Opioid Product(s)" shall mean all natural, semi-synthetic, or synthetic chemicals that interact with  opioid receptors on nerve cells in the body and brain, and that are approved by the U.S. Food & Drug Administration (FDA) and listed by the DEA as Schedule II or III drugs pursuant to the federal Controlled Substances Act (including but not limited to codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, tramadol, and buprenorphine for the treatment of pain). The term "Opioid Products(s)" shall not mean (i) methadone, buprenorphine, buprenorphine/naloxone (oral/sublingual), suboxone, and other substances to treat opioid or other substance use disorders, abuse, addiction, or overdose; (ii) raw materials and/or immediate precursors used in the manufacture or study of Opioids or Opioid Products, but only when such materials and/or immediate precursors are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers; or (iii) Opioid Products listed by the DEA as Schedule IV drugs pursuant to the federal Controlled Substances Act.

O.    "Promote," "Promoting," and "Promotion" shall mean the dissemination of information by the Company to a Third Party that is either likely or intended to influence prescribing practices of Health Care Providers in favor of prescribing greater amounts, quantities, doses, and/or strengths of Opioid Products.

P.    "Section" shall mean, unless the context requires otherwise, a Section of this injunction.

Q.    "Suspicious Order" shall have the same meaning as provided by the Controlled Substances Act, 21 U.S.C. §§ 801-904, and the regulations promulgated thereunder and analogous state laws and regulations

R.    "Third Party" shall mean any person or entity other than the Company or a government entity.

S.    "Treatment of Pain" shall mean the provision of therapeutic modalities to alleviate or reduce pain.

T.    "Unbranded Information" shall mean any information regarding an Opioid or Opioid Product that does not identify a specific product(s).

## II.    INJUNCTIVE RELIEF

### A.    Ban on Promotion

1.    The Company shall not Promote Opioids or Opioid Products, including by:

   a.    Employing or contracting with sales representatives or other persons to Promote Opioids or Opioid Products to Health Care Providers or patients;

   b.    Using speakers, key opinion leaders, thought leaders, lecturers, and/or speaking events for Promotion of Opioids or Opioid Products;

   c.    Sponsoring, or otherwise providing financial support or In-Kind Support to medical education programs;

   d.    Creating, sponsoring, operating, controlling, or otherwise providing financial support or In-Kind Support to any website, network and/or social or other media account for the Promotion of Opioids or Opioid Products;

   e.    Creating, sponsoring, distributing, or otherwise providing financial support or In-Kind Support for materials Promoting Opioids or Opioid Products, including but not limited to brochures, newsletters, pamphlets, journals, books, and guides;

   f.    Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote Opioids or Opioid Products, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements;

   g.    Engaging in Internet search engine optimization or other techniques designed to Promote Opioids or Opioid Products by improving rankings or making content appear among the top results in an Internet search or otherwise be more visible or more accessible to the public on the Internet; and

   h.    Engaging in Internet marketing techniques that Promote Opioids or Opioid Products by identifying or generating sales leads, including through pop up ads or information obtained from web forms completed by prospective patients or consumers.

2.    Notwithstanding Sections II.A.1 and II.C, the Company may:

   a.    Maintain corporate websites;

11

b.      Maintain a website for any Opioid Product that contains principally the following content: the FDA-approved package insert, dosage strengths, dosage forms, packaging configurations, and medication guides,; a statement directing patients or caregivers to speak with a licensed Health Care Provider; Risk Evaluation and Mitigation Strategy (REMS) materials; contact information to report an adverse event or product complaint; and/or information regarding savings programs, savings cards, vouchers, coupons, or rebate programs for the Company's Opioid Products.

c.      Provide information or support the provision of information, as expressly required by (i) law, (ii) settlement agreement, (iii) court order, including order of the Bankruptcy Court, or (iv) any state or federal government agency, including providing all information necessary in order for the Company to comply with its regulatory obligations pursuant to the Federal Food, Drug, and Cosmetic Act, and/or (v) provide information about legal proceedings involving the Company;

d.      Engage Health Care Providers or other Third Parties to assist the Company in responding to, preparing for, and participating in, any initiatives, advisory committees, working groups, action plans, boards, meetings and/or hearings by any state or federal government or state or federal agencies or regulators, including the Food and Drug Administration.

e.      Provide the following by mail, electronic mail, on or though the Company's corporate or product websites or through other electronic or digital methods: FDA-approved package insert, medication guide, approved labeling for Opioid Products, Risk Evaluation and Mitigation Strategy materials, or other prescribing information or guidelines for Opioid Products that are published by a state or federal government agency with jurisdiction;

f.      Provide scientific and/or medical information in response to an unsolicited request by a Health Care Provider concerning Opioid Products by providing truthful, balanced, non-misleading, non-promotional scientific or medical information that is responsive to the specific request.  Such responses should be handled by medical or scientific personnel at the Company who are independent from the sales or marketing departments;

g.      Provide a response to any unsolicited question or request from a patient or caregiver by (i) directing the patient or caregiver to the FDA-approved labeling and reviewing the prescribing information with the patient as relevant to their inquiry, and, to the extent the question cannot be answered solely by reference to a specific provision of the FDA-approved labeling, providing a response that is truthful, balanced, non-misleading and fully consistent with the FDA-approved labeling, if applicable;

(ii) recommending that the patient or caregiver speak with a licensed Health Care Provider without naming any specific provider or healthcare institution; (iii) directing the patient or caregiver to speak with their insurance carrier regarding coverage of an Opioid Product; and/or (iv) directing the patient or caregiver to information concerning savings programs, vouchers, coupons, or rebate programs for the Company's Opioid Products;

h.      Provide information to a payor, formulary committee, distributor, or other similar entity with knowledge and expertise in the area of health care economics concerning the cost or availability of a Company Opioid Product, including the costs compared to the cost of an Opioid Product manufactured or distributed by another company. Such information may include information about the stocking of the Opioid Product; product attributes of the Opioid Product as described in the FDA-approved labeling; tier status; applicable prescribing guidelines that are consistent with the FDA-approved labeling; step-edits for Opioid Products; restrictions; and/or prior authorization status concerning an Opioid Product;

i.      Sponsor or provide financial support or In-Kind Support for an accredited or approved continuing medical education program required by either an FDA-approved Risk Evaluation and Mitigation Strategy program, other federal or state law or regulation, or settlement, through an independent Third Party, which shall be responsible for determining the program's content without the participation of Company;

j.      Provide Unbranded Information in connection with managing pain in End-of-Life Care and/or Cancer-Related Pain Care relating to: the use of Opioids for the Treatment of Pain, as long as the Unbranded Information identifies Company as the source of the information; and

k.      Provide information about, discuss, or comment on, issues regarding mechanisms for preventing opioid abuse and misuse, including (i) abuse deterrent formulations and the use of blister packaging for opioid medications; (ii) the prevention, education, and treatment of opioid use disorders or opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

3.      The Company shall not engage in the following specific Promotional activity relating to any products that are indicated for the treatment of Opioid-induced side effects. For the avoidance of doubt, nothing in this Section prohibits the Company's provision or dissemination of information or activities relating to: (i) the treatment of opioid use disorders; (ii) the prevention, education, and treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose:

      a.      Employing or contracting with sales representatives or other persons to Promote products that are indicated for the treatment of Opioid-induced side effects to Health Care Providers or patients;

      b.      Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote products that are indicated for the treatment of Opioid-induced side effects, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements; and

      c.      Engaging in any other Promotion of products that are indicated for the treatment of Opioid-induced side effects in a manner that encourages the utilization of Opioids or Opioid Products or normalizes the use of Opioids or Opioid Products for chronic pain.

4.      Notwithstanding Section II.A.3 directly above, the Company may engage in other marketing activities for products that are indicated or used for the treatment of Opioid-induced side effects, so long as such activities do not Promote Opioids or Opioid Products. For the avoidance of doubt, nothing in Sections II.A.3 or 4 shall limit or otherwise restrict the ability of the Company to Promote products for occasional constipation or restrict the Company from Promoting (i) products relating to the treatment of opioid use disorders; (ii) products relating to the treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

5.      Treatment of Pain

      a.      The Company shall not engage in Promotion of the Treatment of Pain in a manner that encourages the use of Opioids or Opioid Products.

      b.      The Company shall not Promote the concept that pain is undertreated in a manner that encourages the use of Opioids or Opioid Products.

      c.      The Company shall not knowingly use Third Parties to engage in the Promotion of the Treatment of Pain or Promote the concept that pain is undertreated in manners that encourage the use of Opioids or Opioid Products.

6.      To the extent that the Company engages in conduct permitted by Section II.A.2 above, the Company shall do so in a manner that is:

      a.      Consistent with the CDC Guidelines Recommendations, as applicable; and

      b.      Truthful, not misleading, accurate, and not deceptive.

7. For the avoidance of doubt, nothing in this injunction shall be construed or used to prohibit the Company in any way whatsoever from taking legal or factual positions in litigation, the bankruptcy proceedings, investigations, regulatory actions and initiatives, or other legal or administrative proceedings, or exercising its right to legally challenge the enactment of any federal, state, or local legislation, rule, or regulation, or in any way whatsoever prohibit or limit the Company's right to make public statements or respond to media reports or inquires relating to any legal, administrative, regulatory, or legislative proceedings.

## B. No Financial Reward or Discipline Based on Volume of Opioid Sales

1. The Company shall not provide financial incentives to its sales and marketing employees, or take disciplinary actions against its sales and marketing employees, that are directly based on, or tied to, sales volume or sales quotas for Opioid Products, unless otherwise permitted by the Bankruptcy Court.

2. The Company shall not offer or pay any remuneration directly or through a Third Party, to or from any person in return for the prescribing, sale, use or distribution of Opioid Product. For the avoidance of doubt, this shall not prohibit the provision of rebates and/or chargebacks.

## C. Ban on Funding/Grants to Third Parties to Promote Opioids

1. The Company shall not provide financial support or In-Kind Support to any Third Party for purposes of Promoting Opioids or Opioid Products. For avoidance of doubt, nothing in this Section prevents the Company from directly or indirectly supporting Third Parties as required by any Judgment, court order, including order of the Bankruptcy Court, settlement, or federal or state law or regulation.

2. The Company shall not operate, control, create, sponsor, or provide financial support or In-Kind Support to any medical society or patient advocacy group for the purpose of Promoting Opioids or Opioid Products. For avoidance of doubt, nothing in this Section prevents the Company from supporting any medical society or patient advocacy group as required by any Judgment, court order, including order of the Bankruptcy Court, settlement, or federal or state law or regulation.

3. For the purposes of Promoting Opioids or Opioid Products, the Company shall not provide links to any Third Party website or materials or otherwise distribute materials created by a Third Party relating to any Opioids or Opioid Products. For avoidance of doubt, nothing in this Section prevents the Company from providing links to any Third Party website or materials or otherwise distributing materials created by a Third Parties that the Company supports as required by any Judgment, court order, including order of the Bankruptcy Court, settlement, or federal or state law or regulation.

4.      The Company shall not knowingly use a Third Party, including Health Care Providers, to engage in any activity that the Company itself would be prohibited from engaging in pursuant to the injunction.

5.      No director, officer, or management-level employee of the Company may concurrently serve as a director, board member, employee, agent, or officer of any entity that engages in Promotion relating to Opioids, Opioid Products, the Opioid-related Treatment of Pain, or products indicated to treat Opioid-related side effects.

6.      The Company shall not advocate for the appointment of persons to the board, or hiring persons to the staff, of any entity that principally engages in the Promotion of Opioids and Opioid Products.  For avoidance of doubt, nothing in this paragraph shall prohibit the Company from fully and accurately responding to unsolicited requests or inquiries about a person's fitness to serve as an employee or Board member at any such entity.

7.      For the avoidance of doubt, nothing in Section II.C or this injunction shall be construed or used to prohibit the Company from providing financial or In-Kind Support to, or disseminating information about, Third Parties, including medical societies and patient advocate groups, who are principally involved in issues relating to (i) the treatment of opioid use disorders; (ii) the prevention, education, and treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

## D.  Lobbying Restrictions

1.      The Company shall not directly, or by employing or controlling a Third Party, Lobby for the enactment of any federal, state, or local legislation or promulgation of any rule or regulation that:

   a.      Encourages or requires Health Care Providers to prescribe Opioids or sanctions Health Care Providers for failing to prescribe Opioids or failing to treat pain with Opioids;

   b.      Would have the effect of limiting access to any non-Opioid alternative pain treatments; or

   c.      Pertains to the classification of any Opioid or Opioid Product as a scheduled drug under the Controlled Substances Act.

2.      The Company shall not directly, or by employing or controlling a Third Party, Lobby against the enactment of any federal, state or local legislation or promulgation of any rule or regulation that supports:

a. The use of non-pharmacologic therapy and/or non-Opioid pharmacologic therapy to treat chronic pain over or instead of Opioid therapy, including but not limited to Third Party payment or reimbursement for such therapies;

b. The use and/or prescription of immediate release Opioids instead of extended release Opioids when Opioid therapy is initiated, including but not limited to Third Party reimbursement or payment for such prescriptions.

c. The prescribing of the lowest effective dose of an Opioid, including but not limited to Third Party reimbursement or payment for such prescription;

d. The limitation of initial prescriptions of Opioids to treat acute pain;

e. The prescribing and other means of distribution of naloxone to minimize the risk of overdose, including but not limited to Third Party reimbursement or payment for naloxone.

f. The use of urine testing before starting Opioid therapy and annual urine testing when Opioids are prescribed, including but not limited to Third Party reimbursement or payment for such testing;

g. Evidence-based treatment (such as using medication-assisted treatment with buprenorphine or methadone in combination with behavioral therapies) for Opioid Use Disorder, including but not limited to third party reimbursement or payment for such treatment; or

h. The implementation or use of Opioid drug disposal systems that have proven efficacy for the Company's Opioid Products.

3. The Company shall not directly, or by employing or controlling a Third Party, Lobby against the enactment of any federal, state or local legislation or promulgation of any rule or regulation limiting the operation or use of PDMPs, including, but not limited to, provisions requiring Health Care Providers to review PDMPs when Opioid therapy is initiated and with every prescription thereafter.

4. Nothing in Section II.D or this Injunction, however, limits the Company from:

a. Challenging the enforcement of, or suing to stop the enactment of, or for declaratory or injunctive relief with respect to any legislation, rules, or regulations, including legislation, rules, or regulations relating to any issues referred to in Section II.D.1;

b. Communications made by the Company in response to a statute, rule, regulation, or order requiring such communication;

    c.    Communications by a representative of the Company appearing before a federal or state legislative or administrative body, committee, or subcommittee as result of a mandatory order, subpoena commanding that person to testify or an unsolicited request from an elected or appointed official, federal or state legislative or administrative body, committee, or subcommittee.

    d.    Responding to an unsolicited request for the input on the passage of legislation or the promulgation of any rule or regulation.

    l.    Communications by the Company, including to elected or appointed officials, federal or state legislative or administrative bodies, committees, or subcommittees regarding (i) mechanisms for preventing opioid abuse and misuse, including abuse deterrent formulations and the use of blister packaging for opioid medications, (ii) the prevention, education, and treatment of opioid use disorders or opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

5.    The Company shall require all of its officers, employees and representatives engaged in Lobbying to certify in writing to them that they are aware of and will fully comply with the provisions of this injunction with respect to Lobbying.

**E.    Ban on High Dose Opioids**

**1.**    The Company shall abide by any decision by the FDA on the pending Citizens Petition dated September 1, 2017 (docket number FDA-2017-P-5396) requesting a ban on specific high doses of prescription oral and transmucosal Opioids that, when taken as directed, exceed 90 morphine milligram equivalents per day.

**F.    Ban on Prescription Savings Programs**

1.    The Company shall not directly, or by employing or controlling a Third Party, Promote savings card, vouchers, coupons, or rebate programs to Health Care Providers for any Opioid Product. Nothing in this provision shall prohibit the Company from providing savings cards, vouchers, coupons, or rebate programs, including electronic point-of-dispense programs: (i) in response to requests from Health Care Providers, patients, or other caregivers or (ii) on its website or product-specific websites.

2.    The Company shall not directly or through a Third Party provide financial support to any Third Party to avoid the prohibited conduct in Section II.F.1 above.

**G.    Self-Monitoring and Reporting of Direct and Downstream Customers.**

1.    The Company shall operate an effective monitoring and reporting system that shall include processes and procedures that:

a.     Reasonably analyze all collected Direct Customer Data to identify a Suspicious Order of a Company Opioid Product by a direct customer;

b.     Reasonably utilize available Downstream Customer Data to identify whether a downstream customer poses a material risk of diversion of a Company Opioid Product;

c.     Analyze all information that the Company receives that indicates an unreasonable risk of diversion activity of a Company Opioid Product or an unreasonable potential for diversion activity of a Company Opioid Product, by a direct customer or a downstream customer, including reports by employees and customers of the Company, Health Care Providers, law enforcement, state, tribal, or federal agencies, or the media; and

d.     Unless otherwise required by law, upon a relevant state's request, report to the relevant state agency any direct customer or downstream customer in each state that the Company has identified as part of the monitoring required by (a)-(c), above, and any Company customer relationship in each state that was terminated by the Company because of an unreasonable risk of diversion or unreasonable risk for potential for diversion.

2.     Upon request, the Company shall promptly provide reasonable assistance to law enforcement investigations of potential diversion and/or suspicious circumstances involving the Company's Opioid Products subject to, and without waiving, any applicable privilege objections.

3.     If one or more of the nation's three largest pharmaceutical distributors establishes a system to aggregate data concerning transactions of Opioid Products and/or concerning reports of Suspicious Orders of Opioid Products, and the system is designed to use information provided by manufacturers of Opioid Products, the Company shall provide information to such system to the extent reasonably available and feasible, subject to, and without waiving, any applicable privilege objections.

4.     The Company agrees that it will refrain from acting as a distributor of Opioid Products by providing an Opioid Product directly to a retail pharmacy or Health Care Provider or otherwise engaging in activity that requires it to be registered as a distributor under the Controlled Substances Act unless otherwise required by local, state, or federal law. Nothing in this provision, however, prevents the Company from acting as a distributor of medications relating to (i) the treatment of opioid use disorders; (ii) the treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and (iii) rescue medications for opioid overdose.

**H.    Appointment and Responsibilities of Monitor.**

1.    The Company shall work expeditiously to retain a Monitor, and shall consult in good faith with the Official Committee of Unsecured Creditors, the Ad Hoc Group of Non-Consenting States, and the ad hoc committee of governmental and other contingent litigation claimants, as to proposed candidates for the Monitor.

2.    The Monitor shall perform its duties according to the terms of this injunction and shall be vested with all rights and powers reasonably necessary to carry out such powers, duties, authority, and responsibilities enumerated herein.

3.    The Monitor shall work with all diligence to confirm and oversee compliance with this injunction, and shall provide reports to the Company's Board of Directors and the Bankruptcy Court as outlined below.

4.    The Monitor shall:

   a.    subject to any legally recognized privilege and as necessary or to perform their duties hereunder, have full and complete access to the Company's personnel, books, records, and facilities, and to any other relevant information, as the Monitor may request. The Company shall develop such information as the Monitor may request and shall fully, completely and promptly cooperate with the Monitor. The Monitor may raise with the Court any issues relating to any failure of or delay in such cooperation for an expedited resolution by the Court;

   b.    serve, without bond or other security, at the cost and expense of the Company, with the Monitor's fees subject to final approval by the Court. The Monitor shall have the authority to employ, upon Court approval, at the cost and expense of the Debtors' estates, such consultants, accountants, attorneys, and other representatives and assistants as are necessary to carry out the Monitor's and responsibilities. The Monitor shall serve throughout the term of this injunction and submission of a final report;

   c.    have no obligation, responsibility or liability for the operations of the Company;

   d.    file a report no less than every 90 days regarding compliance by the Company with the terms of this injunction; provided that elements of any such report may be filed under seal or subject to such other confidentiality restrictions contained in the Protective Order. The Court may, in response to such reports, provide further direction to the Monitor as it deems appropriate;

   e.    sign onto the Protective Order entered by the Court in this matter, and any confidentiality agreement consistent with the Protective Order as deemed necessary by the parties, and each of the Monitor's consultants,

20

accountants, attorneys and other representatives and assistants shall also sign onto the Protective Order entered by the Court, and any confidentiality agreement consistent with the Protective Order as deemed necessary by the parties; *provided, however*, that nothing shall restrict the Monitor from providing any information to the Court and the parties consistent with the terms of the Protective Order; and

f.    promptly seek an order requiring compliance or such other remedies as may be appropriate under the circumstances should the Company not comply with this injunction.

5.    **Disputes Regarding Compliance**

a.    If an Attorney General should have a reasonable basis to believe the Company is not in compliance with the terms of this injunction, the Attorney General shall notify the Company, via the Company's General Counsel, in writing of the specific objection, including identifying the provisions of this injunction that the practice appears to violate, and give the Company thirty (30) days to respond to the notification and cure the conduct at issue, if necessary.

b.    The Attorney General shall provide notification to the Monitor at the same time as notification is provided to the Company. To the extent that the Company fails to cure the alleged conduct within the thirty (30) day period, the Monitor shall have ten (10) days to determine the appropriate action and response. After that ten (10) day period and unless otherwise ordered by the Monitor or Bankruptcy Court, any Attorney General may petition the Bankruptcy Court to enforce the terms of this injunction and/or to obtain any remedy as a result of alleged non-compliance with the Company.

I.    **Initial Covered Sackler Persons**

c.    The Initial Covered Sackler Persons shall not actively engage in the opioid business in the United States (other than by virtue of their ownership of beneficial interests in the Company), and shall not take any action that would interfere with the Company's compliance with its obligations under this injunction.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |
| **PURDUE PHARMA L.P.,** *et al.*, | |
| Plaintiffs, | Adv. Pro. No. 19-08289 |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS,** *et al.*, | |
| Defendants. | |

**THIRD AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a)**
**GRANTING MOTION FOR A PRELIMINARY INJUNCTION**

Upon the motion, dated September 18, 2019 ("**Motion**"), of Purdue Pharma L.P. and

certain affiliated debtors, as debtors and debtors in possession (collectively, "**Debtors**"), which

are plaintiffs in this adversary proceeding, for an order pursuant to section § 105(a) of title 11 of

the United States Code ("**Bankruptcy Code**") and Rule 7065 of the Federal Rules of Bankruptcy

Procedure ("**Bankruptcy Rules**"), to (i) enjoin the governmental defendants in this adversary

proceeding ("**Governmental Defendants**") from the commencement or continuation of their

active judicial, administrative, or other actions or proceedings against the Debtors that were or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

could have been commenced before the commencement of the case ("**Governmental Actions**"),

which are identified in Exhibit A to the Complaint, as well as the commencement or continuation

of any other actions against the Debtors alleging substantially similar facts or causes of action as

those alleged in the Governmental Actions, and (ii) enjoin the Governmental Defendants and the

private defendants ("**Private Defendants**") in this adversary proceeding from the

commencement or continuation of their active judicial, administrative, or other actions or

proceedings, identified in Exhibit B to the Complaint, and the commencement or continuation of

other actions alleging substantially similar facts or causes of action as those alleged in the actions

identified in Exhibit A or Exhibit B to the Complaint, against former or current (a) owners

(including any trusts and their respective trustees and beneficiaries), (b) directors, (c) officers,

(d) employees, and (e) other similar associated entities of the Debtors that were or could have

been commenced before the commencement of the case ("**Related Parties**," as identified in

Exhibit B to the Complaint,[2] and the claims against them described in this paragraph, the

---

[2] The Related Parties identified in Exhibit B to the Complaint are: The Purdue Frederick
Company Inc.; The P.F. Laboratories Inc.; Purdue Pharma Technologies Inc.; PLP Associates
Holdings L.P.; PLP Associates Holdings Inc.; BR Holdings Associates L.P.; BR Holdings
Associates Inc.; Rosebay Medical Company L.P.; Rosebay Medical Company, Inc.; Beacon
Company; PRA Holdings Inc.; Pharmaceutical Research Associates Inc.; Purdue Holdings L.P.;
Rhodes Pharmaceuticals Inc.; Rhodes Technologies Inc.; Coventry Technologies L.P.; MNP
Consulting Limited; Richard S. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A.
Sackler; Ilene Sackler Lefcourt; Beverly Sackler; Theresa Sackler; David A. Sackler; Estate of
Mortimer Sackler; Estate of Raymond Sackler; Trust for the Benefit of Members of the
Raymond Sackler Family; Raymond Sackler Trust; Beverly Sackler, Richard S. Sackler, and
Jonathan D. Sackler, as Trustees Under Trust Agreement Dated November 5, 1964; Beverly
Sackler, Richard S. Sackler, and Jonathan D. Sackler, as Trustees Under Trust Agreement Dated
November 5, 1974; Paulo Costa; Cecil Pickett; Ralph Snyderman; Judith Lewent; Craig Landau;
Mark Timney; Stuart D. Baker; Frank Peter Boer; John Stewart; Russell Gasdia; Marv Kelly;
Shelli Liston; Heather Weaver; Doug Powers; Lori Fuller; Rodney Davis; Brandon Worley;
Donald Leathers; Wendy Kay; Michael Madden; LeAvis Sullivan; Jeffrey Ward; Beth Taylor;
Leigh Varnadore; Paul Kitchin; Mark Waldrop; Mark Radcliffe; Mark Ross; Patty Carnes; Carol
Debord; Jeff Waugh; Shane Cook; James David Haddox; Aida Maxsam; Tessa Rios; Amy K.
Thompson; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca Sterling; Vanessa

"**Related-Party Claims**"); and the Court having jurisdiction to decide the Motion and the relief

requested therein under 28 U.S.C. §§ 157(a)-(b) and 1334(b); and there being due and sufficient

notice of the Motion; and the Court having reviewed the Complaint, the Motion, the Debtors'

brief in support of the Motion, the declarations in support of the Motion, and other evidence and

argument submitted by the Debtors in support thereof; all pleadings filed in support of the

Motion; and all objections filed in opposition or partial opposition to the Motion, as well as all

filed letters in response to the Motion; and upon the record of and representations made at the

hearing held by the Court on the Motion's request for entry of a preliminary injunction on

October 11, 2019 (the "**October 11 Hearing**") and at the hearing held on November 6, 2019 (the

"**November 6 Hearing**," together with the October 11 Hearing, the "**Hearings**"); and, after due

deliberation and for the reasons set forth on the record by the Court at the Hearings, good and

sufficient cause appearing having entered Orders on October 11, 2019 granting the Motion in

part and on October 18, 2019 amending such Order; and such Orders having contemplated a

procedure to amend the Orders further; and good and sufficient cause appearing to amend such

Orders as provided herein, the Court grants the Debtors' request to amend the Orders as provided

in this Amended Order, which amends and supersedes the Court's prior Orders.  Now, therefore,

the Court finds and concludes as follows:

      (a)     The Plaintiffs in these adversary proceedings are the Debtors.  The

Defendants in this adversary proceeding are the Governmental Defendants and the

Private Defendants, which are listed in the caption to the Complaint and in the

"Underlying Plaintiffs" column of Exhibit A and Exhibit B to the Complaint, with such

Exhibits being made a part of and incorporated in this Order.  The Defendants in this

---

Weatherspoon; Chris Hargrove; Brandon Hassenfuss; Joe Read; and Andrew T. Stokes.

adversary proceeding are all plaintiffs in judicial, administrative, or other actions or proceedings that seek to hold the Debtors and/or the Related Parties, as identified in Exhibit B, liable in connection with claims and/or causes of action arising out of or otherwise related to the Debtors' prescription opioid business.

(b)     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

(c)     The Debtors have demonstrated that the continuation of the active litigation against them and the Related Parties, identified in Exhibits A and B to the Complaint, respectively, would result in irreparable harm to the Debtors and their reorganization.

(d)     The representatives of the Raymond Sackler family and of the Mortimer Sackler family (collectively, the "**Sackler Families**") agreed on the record at the October 11 Hearing to toll all applicable statutes of limitations and similar time limits on the commencement of Additional Actions against any member of the Sackler Families, and to treat as inoperative all deadlines (including deadlines for appeals) in any currently pending Related Party Claim against any member of the Sackler Families, for the duration of this preliminary injunction.

(e)     Accordingly, this Court finds it appropriate to enter a preliminary injunction as provided herein pursuant to section § 105(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules.

(f)     The legal and factual bases set forth in the Complaint, the Motion, the Brief, other supporting papers, and at the Hearings establish just cause for the relief granted herein.

(g)     Arizona, California, Colorado, Connecticut, Delaware, the District of

Columbia, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota,

New Hampshire, New Jersey, New York, Nevada, North Carolina, Oregon,

Pennsylvania, Rhode Island, Vermont, Virginia, Washington, Wisconsin, the Ad Hoc

Group of Non-Consenting States [Docket No. 296 of Case No. 19-23649] and the Multi-

State Governmental Entities Group and each of its members[3] (as listed on the October 30,

2019 Verified Statement pursuant to Bankruptcy Rule 2019 filed under Docket No. 409

of Case No. 19-23649) (collectively, the "**Potential Opt-Out Parties**") have each

consented and agreed to continue to abide by the terms of the *Second Amended Order*

*Pursuant To 11 U.S.C. § 105(a) Granting Motion For A Preliminary Injunction* [Docket

No. 105 of Adv. Pro. No. 19-08289] (the "**November 6 Order**"), without the need to

have any order entered against them.

Based on these findings, it is hereby:

ORDERED, that the Governmental Defendants, other than those who are Potential

Opt-Out Parties, and the Private Defendants are prohibited and enjoined from (i) the

commencement or continuation of their active judicial, administrative, or other actions or

proceedings against the Debtors and/or Related Parties that were or could have been commenced

before the commencement of the case under this title against the Debtors and/or the Related

---

[3] Based upon the record of the November 6 Hearing, the following members of the Multi-State Governmental Entities Group are not Potential Opt-Out Parties and are instead bound to the terms of the November 6 Order until April 8, 2020: (1) Bryant C. Dunaway, in his official capacity as the District Attorney General for the Thirteenth Judicial District, Tennessee; (2) Jennings H. Jones, in his official capacity as the District Attorney General for the Sixteenth Judicial District, Tennessee; (3) Robert J. Carter, in his official capacity as the District Attorney General for the Seventeenth Judicial District, Tennessee; (4) Brent A. Cooper, in his official capacity as the District Attorney General for the Twenty-Second Judicial District, Tennessee; and (5) Lisa S. Zavogiannis, in her official capacity as the District Attorney General for the Thirty-First Judicial District, Tennessee.

Parties arising from or in any way relating to the Debtors' prescription opioid business, including the actions reflected in the attached Exhibit A and Exhibit B, as well as (ii) from commencing or continuing any other actions against the Debtors or Related Parties alleging substantially similar facts or causes of action as those alleged in actions reflected in the attached Exhibit A and Exhibit B, in each case through and including Wednesday, April 8, 2020.  The preliminary injunction period may be extended by further order of the Court.

ORDERED, that each Potential Opt-Out Party may withdraw its consent on one of two dates—December 19, 2019 and February 21, 2020 (the "**Opt-Out Dates**")—by filing with the Bankruptcy Court a notice (a "**Withdrawal Notice**") in the form attached hereto as Appendix II.[4]  Each Potential Opt-Out Party filing a Withdrawal Notice must send a copy of the same to the Debtors' counsel at least two business days before such filing.  If any Potential Opt-Out Party files a Withdrawal Notice on either Opt-Out Date, then, no later than three business days after such Opt-Out Date, counsel for the Debtors shall submit to the Court for immediate entry a new proposed order that, upon its entry, will terminate the voluntary compliance of and instead bind each Potential Opt-Out Party that timely filed and served a Withdrawal Notice to the same terms imposed on other parties by the November 6 Order from the applicable Opt-Out Date until April 8, 2020.  For the avoidance of doubt, entry of the November 6 Order (which does not enjoin Potential Opt-Out Parties in light of their full voluntary compliance therewith) and entry of this order shall not impair any rights of Potential Opt-Out Parties to appeal any subsequent order entered in connection with a Withdrawal Notice as contemplated herein.

---

[4] For the avoidance of doubt, pages 84:8-87:17 of the November 6, 2019 transcript continue to control Arizona's Brief in Reply in the United States Supreme Court proceeding docketed as *State of Arizona v. Richard Sackler et al.*, No. 22O151.

ORDERED, that the Debtors in these chapter 11 cases shall be subject to the Voluntary Injunction annexed hereto as Appendix I.

ORDERED, that the Debtors need not give security in connection with this injunctive relief.

ORDERED, that this Order shall be promptly filed in the Clerk's Office and entered into the record.

ORDERED, that the Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

ORDERED, that nothing in this Order shall prevent the Debtors from seeking a further extension of the requested injunction.

ORDERED, that if, while the preliminary injunction provided for in this Order is effective, either (i) any inactive litigation currently pending against the Debtors or Related Parties becomes active, or (ii) any new action is commenced against the Debtors or Related Parties (in either case, an "**Additional Action**"), the Debtors may promptly serve the plaintiff or plaintiffs in such Additional Action ("**Applicable Plaintiff**") with a copy of the Complaint, the Motion, the Debtors' memorandum of law in support of the Motion, and this Order (the "**Service Documents**"). The Debtors shall file a notice of such service on the docket promptly after service. If the Applicable Plaintiff in such Additional Action does not file and serve an objection within seven (7) days of service of the Service Documents, the Court may determine whether such Additional Action should be enjoined pursuant to this Order without further proceedings. If the Applicable Plaintiff files and serves an objection, the Debtors shall have the right to file and serve a response to the objection within seven (7) days of service of the objection, after which the Court may determine whether such Additional Action should be

7

enjoined pursuant to this Order without further proceedings, or either party may seek to schedule and provide notice of a hearing.

ORDERED, that all applicable statutes of limitations and similar time limits on the commencement of Additional Actions, and all deadlines (including deadlines for appeals) in any currently pending Governmental Action or Related Party Claim (including as agreed on the record at the Hearing by the representatives of the Sackler Families), shall be tolled or otherwise inoperative for the duration of this preliminary injunction.  This is without prejudice to any party's rights to assert that any currently pending Governmental Action or Related Party Claim is time barred, or that commencement of any Additional Action, or any other action taken by a party with respect to any Governmental Action or Related Party Claim after the entry of this Order would have been time barred or untimely had it been commenced or taken before the entry of this Order.

ORDERED, that nothing in this Order shall affect or abrogate the automatic stay as to the Debtors under section 362 of the Bankruptcy Code.

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: November 20, 2019
White Plains, New York

/s/ Robert D. Drain
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# **Appendix I**

## **Voluntary Injunction**

# I.   DEFINITIONS

A.  "Bankruptcy Court" or "Court" shall mean the court presiding over the chapter 11 proceedings *In re Purdue Pharma L.P. et al.*, Case No. 19-23649-RDD (S.D.N.Y.).

B.  "Cancer-Related Pain Care" shall mean care that provides relief from pain caused by active cancer or ongoing cancer treatment, as distinguished from treatment provided during remission.

C.  "CDC Guideline Recommendations" shall mean the 12 enumerated Recommendations published by the U.S. Centers for Disease Control and Prevention (CDC) for the prescribing of opioid pain medication for patients 18 and older in primary care settings as part of its 2016 Guideline for Prescribing Opioids for Chronic Pain (CDC Guidelines), as updated or amended by the CDC.

D.  "Company" shall mean the Debtors as defined in these chapter 11 proceedings *In re Purdue Pharma L.P. et al.*, Case No. 19-23649-RDD (S.D.N.Y.).

E.  "Direct Customer Data" shall mean transaction information that the Company collects relating to the Company's direct customers' orders, including direct customer's wholesale orders, order history, and customer files.

F.  "Downstream Customer Data" shall mean transaction information that the Company collects relating to the Company's direct customers' sales to downstream customers, including chargeback data tied to the Company providing certain discounts, "867 data," and IQVIA data.

G.  "End-of-Life Care" shall mean care for persons with a terminal illness or at high risk for dying in the near future in hospice care, hospitals, long-term care settings, or at home.

H.  "Health Care Provider" shall mean any U.S.-based physician, nurse practitioner, physician assistant, dentist, pharmacist, podiatrist, nurse, or other person engaged in the business of providing health care services and/or prescribing an Opioid Product and any medical facility, practice, hospital, clinic, or pharmacy engaged in providing health care services and/or prescribing an Opioid Product in the United States.

I.  "Including but not limited to," when followed by a list or examples, shall mean that list or examples are illustrative instances only and shall not be read to be restrictive.

J.  "In-Kind Support" shall mean payment or assistance in the form of goods, commodities, services, or anything else of value.

K.  "Initial Covered Sackler Persons" shall mean the Estate of Beverly Sackler, David A. Sackler, Ilene Sackler, Jonathan D. Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard S. Sackler, Theresa Sackler, any trusts of which any of the foregoing are beneficiaries, and the trustees thereof (solely in their capacities as such), each Shareholder Party and each other entity or person that directly or indirectly owns equity in, or has voting control over, any of the Debtors, and in the event of the death of an

Initial Covered Sackler Person who is a natural person, other than a natural person who is an Initial Covered Sackler Person solely in the capacity as a trustee, the estate of such person.

L.    "Lobby" and "Lobbying" shall have the same meaning as such terms have under U.S. federal law and the law governing the person or entity being lobbied.

M.    "Opioid(s)" shall mean all natural, semi-synthetic, or synthetic chemicals that interact with opioid receptors on nerve cells in the body and brain.  The term "Opioids" shall not mean (i) methadone, buprenorphine, buprenorphine/naloxone (oral/sublingual), suboxone, and other substances when used exclusively to treat opioid or other substance use disorders, abuse, addiction, or overdose; (ii) raw materials and/or immediate precursors used in the manufacture or study of Opioids or Opioid Products, but only when such materials and/or immediate precursors are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers; or (iii) Opioids listed by the DEA as Schedule IV drugs pursuant to the federal Controlled Substances Act.

N.    "Opioid Product(s)" shall mean all natural, semi-synthetic, or synthetic chemicals that interact with  opioid receptors on nerve cells in the body and brain, and that are approved by the U.S. Food & Drug Administration (FDA) and listed by the DEA as Schedule II or III drugs pursuant to the federal Controlled Substances Act (including but not limited to codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, tramadol, and buprenorphine for the treatment of pain). The term "Opioid Products(s)" shall not mean (i) methadone, buprenorphine, buprenorphine/naloxone (oral/sublingual), suboxone, and other substances to treat opioid or other substance use disorders, abuse, addiction, or overdose; (ii) raw materials and/or immediate precursors used in the manufacture or study of Opioids or Opioid Products, but only when such materials and/or immediate precursors are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers; or (iii) Opioid Products listed by the DEA as Schedule IV drugs pursuant to the federal Controlled Substances Act.

O.    "Promote," "Promoting," and "Promotion" shall mean the dissemination of information by the Company to a Third Party that is either likely or intended to influence prescribing practices of Health Care Providers in favor of prescribing greater amounts, quantities, doses, and/or strengths of Opioid Products.

P.    "Section" shall mean, unless the context requires otherwise, a Section of this injunction.

Q.    "Suspicious Order" shall have the same meaning as provided by the Controlled Substances Act, 21 U.S.C. §§ 801-904, and the regulations promulgated thereunder and analogous state laws and regulations

R.    "Third Party" shall mean any person or entity other than the Company or a government entity.

S.    "Treatment of Pain" shall mean the provision of therapeutic modalities to alleviate or reduce pain.

T.      "Unbranded Information" shall mean any information regarding an Opioid or Opioid Product that does not identify a specific product(s).

## II.      INJUNCTIVE RELIEF

**A.      Ban on Promotion**

1.      The Company shall not Promote Opioids or Opioid Products, including by:

    a.      Employing or contracting with sales representatives or other persons to Promote Opioids or Opioid Products to Health Care Providers or patients;

    b.      Using speakers, key opinion leaders, thought leaders, lecturers, and/or speaking events for Promotion of Opioids or Opioid Products;

    c.      Sponsoring, or otherwise providing financial support or In-Kind Support to medical education programs;

    d.      Creating, sponsoring, operating, controlling, or otherwise providing financial support or In-Kind Support to any website, network and/or social or other media account for the Promotion of Opioids or Opioid Products;

    e.      Creating, sponsoring, distributing, or otherwise providing financial support or In-Kind Support for materials Promoting Opioids or Opioid Products, including but not limited to brochures, newsletters, pamphlets, journals, books, and guides;

    f.      Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote Opioids or Opioid Products, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements;

    g.      Engaging in Internet search engine optimization or other techniques designed to Promote Opioids or Opioid Products by improving rankings or making content appear among the top results in an Internet search or otherwise be more visible or more accessible to the public on the Internet; and

    h.      Engaging in Internet marketing techniques that Promote Opioids or Opioid Products by identifying or generating sales leads, including through pop up ads or information obtained from web forms completed by prospective patients or consumers.

2.      Notwithstanding Sections II.A.1 and II.C, the Company may:

    a.      Maintain corporate websites;

b.    Maintain a website for any Opioid Product that contains principally the following content: the FDA-approved package insert, dosage strengths, dosage forms, packaging configurations, and medication guides,; a statement directing patients or caregivers to speak with a licensed Health Care Provider; Risk Evaluation and Mitigation Strategy (REMS) materials; contact information to report an adverse event or product complaint; and/or information regarding savings programs, savings cards, vouchers, coupons, or rebate programs for the Company's Opioid Products.

c.    Provide information or support the provision of information, as expressly required by (i) law, (ii) settlement agreement, (iii) court order, including order of the Bankruptcy Court, or (iv) any state or federal government agency, including providing all information necessary in order for the Company to comply with its regulatory obligations pursuant to the Federal Food, Drug, and Cosmetic Act, and/or (v) provide information about legal proceedings involving the Company;

d.    Engage Health Care Providers or other Third Parties to assist the Company in responding to, preparing for, and participating in, any initiatives, advisory committees, working groups, action plans, boards, meetings and/or hearings by any state or federal government or state or federal agencies or regulators, including the Food and Drug Administration.

e.    Provide the following by mail, electronic mail, on or though the Company's corporate or product websites or through other electronic or digital methods: FDA-approved package insert, medication guide, approved labeling for Opioid Products, Risk Evaluation and Mitigation Strategy materials, or other prescribing information or guidelines for Opioid Products that are published by a state or federal government agency with jurisdiction;

f.    Provide scientific and/or medical information in response to an unsolicited request by a Health Care Provider concerning Opioid Products by providing truthful, balanced, non-misleading, non-promotional scientific or medical information that is responsive to the specific request. Such responses should be handled by medical or scientific personnel at the Company who are independent from the sales or marketing departments;

g.    Provide a response to any unsolicited question or request from a patient or caregiver by (i) directing the patient or caregiver to the FDA-approved labeling and reviewing the prescribing information with the patient as relevant to their inquiry, and, to the extent the question cannot be answered solely by reference to a specific provision of the FDA-approved labeling, providing a response that is truthful, balanced, non-misleading and fully consistent with the FDA-approved labeling, if applicable;

(ii) recommending that the patient or caregiver speak with a licensed Health Care Provider without naming any specific provider or healthcare institution; (iii) directing the patient or caregiver to speak with their insurance carrier regarding coverage of an Opioid Product; and/or (iv) directing the patient or caregiver to information concerning savings programs, vouchers, coupons, or rebate programs for the Company's Opioid Products;

h.   Provide information to a payor, formulary committee, distributor, or other similar entity with knowledge and expertise in the area of health care economics concerning the cost or availability of a Company Opioid Product, including the costs compared to the cost of an Opioid Product manufactured or distributed by another company. Such information may include information about the stocking of the Opioid Product; product attributes of the Opioid Product as described in the FDA-approved labeling; tier status; applicable prescribing guidelines that are consistent with the FDA-approved labeling; step-edits for Opioid Products; restrictions; and/or prior authorization status concerning an Opioid Product;

i.   Sponsor or provide financial support or In-Kind Support for an accredited or approved continuing medical education program required by either an FDA-approved Risk Evaluation and Mitigation Strategy program, other federal or state law or regulation, or settlement, through an independent Third Party, which shall be responsible for determining the program's content without the participation of Company;

j.   Provide Unbranded Information in connection with managing pain in End-of-Life Care and/or Cancer-Related Pain Care relating to: the use of Opioids for the Treatment of Pain, as long as the Unbranded Information identifies Company as the source of the information; and

k.   Provide information about, discuss, or comment on, issues regarding mechanisms for preventing opioid abuse and misuse, including (i) abuse deterrent formulations and the use of blister packaging for opioid medications; (ii) the prevention, education, and treatment of opioid use disorders or opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

3.   The Company shall not engage in the following specific Promotional activity relating to any products that are indicated for the treatment of Opioid-induced side effects. For the avoidance of doubt, nothing in this Section prohibits the Company's provision or dissemination of information or activities relating to: (i) the treatment of opioid use disorders; (ii) the prevention, education, and treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose:

14

a.   Employing or contracting with sales representatives or other persons to Promote products that are indicated for the treatment of Opioid-induced side effects to Health Care Providers or patients;

b.   Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote products that are indicated for the treatment of Opioid-induced side effects, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements; and

c.   Engaging in any other Promotion of products that are indicated for the treatment of Opioid-induced side effects in a manner that encourages the utilization of Opioids or Opioid Products or normalizes the use of Opioids or Opioid Products for chronic pain.

4.   Notwithstanding Section II.A.3 directly above, the Company may engage in other marketing activities for products that are indicated or used for the treatment of Opioid-induced side effects, so long as such activities do not Promote Opioids or Opioid Products.  For the avoidance of doubt, nothing in Sections II.A.3 or 4 shall limit or otherwise restrict the ability of the Company to Promote products for occasional constipation or restrict the Company from Promoting (i) products relating to the treatment of opioid use disorders; (ii) products relating to the treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

5.   Treatment of Pain

a.   The Company shall not engage in Promotion of the Treatment of Pain in a manner that encourages the use of Opioids or Opioid Products.

b.   The Company shall not Promote the concept that pain is undertreated in a manner that encourages the use of Opioids or Opioid Products.

c.   The Company shall not knowingly use Third Parties to engage in the Promotion of the Treatment of Pain or Promote the concept that pain is undertreated in manners that encourage the use of Opioids or Opioid Products.

6.   To the extent that the Company engages in conduct permitted by Section II.A.2 above, the Company shall do so in a manner that is:

a.   Consistent with the CDC Guidelines Recommendations, as applicable; and

b.   Truthful, not misleading, accurate, and not deceptive.

7. For the avoidance of doubt, nothing in this injunction shall be construed or used to prohibit the Company in any way whatsoever from taking legal or factual positions in litigation, the bankruptcy proceedings, investigations, regulatory actions and initiatives, or other legal or administrative proceedings, or exercising its right to legally challenge the enactment of any federal, state, or local legislation, rule, or regulation, or in any way whatsoever prohibit or limit the Company's right to make public statements or respond to media reports or inquires relating to any legal, administrative, regulatory, or legislative proceedings.

## B. No Financial Reward or Discipline Based on Volume of Opioid Sales

1. The Company shall not provide financial incentives to its sales and marketing employees, or take disciplinary actions against its sales and marketing employees, that are directly based on, or tied to, sales volume or sales quotas for Opioid Products, unless otherwise permitted by the Bankruptcy Court.

2. The Company shall not offer or pay any remuneration directly or through a Third Party, to or from any person in return for the prescribing, sale, use or distribution of Opioid Product. For the avoidance of doubt, this shall not prohibit the provision of rebates and/or chargebacks.

## C. Ban on Funding/Grants to Third Parties to Promote Opioids

1. The Company shall not provide financial support or In-Kind Support to any Third Party for purposes of Promoting Opioids or Opioid Products. For avoidance of doubt, nothing in this Section prevents the Company from directly or indirectly supporting Third Parties as required by any Judgment, court order, including order of the Bankruptcy Court, settlement, or federal or state law or regulation.

2. The Company shall not operate, control, create, sponsor, or provide financial support or In-Kind Support to any medical society or patient advocacy group for the purpose of Promoting Opioids or Opioid Products. For avoidance of doubt, nothing in this Section prevents the Company from supporting any medical society or patient advocacy group as required by any Judgment, court order, including order of the Bankruptcy Court, settlement, or federal or state law or regulation.

3. For the purposes of Promoting Opioids or Opioid Products, the Company shall not provide links to any Third Party website or materials or otherwise distribute materials created by a Third Party relating to any Opioids or Opioid Products. For avoidance of doubt, nothing in this Section prevents the Company from providing links to any Third Party website or materials or otherwise distributing materials created by a Third Parties that the Company supports as required by any Judgment, court order, including order of the Bankruptcy Court, settlement, or federal or state law or regulation.

4.     The Company shall not knowingly use a Third Party, including Health Care Providers, to engage in any activity that the Company itself would be prohibited from engaging in pursuant to the injunction.

5.     No director, officer, or management-level employee of the Company may concurrently serve as a director, board member, employee, agent, or officer of any entity that engages in Promotion relating to Opioids, Opioid Products, the Opioid-related Treatment of Pain, or products indicated to treat Opioid-related side effects.

6.     The Company shall not advocate for the appointment of persons to the board, or hiring persons to the staff, of any entity that principally engages in the Promotion of Opioids and Opioid Products.  For avoidance of doubt, nothing in this paragraph shall prohibit the Company from fully and accurately responding to unsolicited requests or inquiries about a person's fitness to serve as an employee or Board member at any such entity.

7.     For the avoidance of doubt, nothing in Section II.C or this injunction shall be construed or used to prohibit the Company from providing financial or In-Kind Support to, or disseminating information about, Third Parties, including medical societies and patient advocate groups, who are principally involved in issues relating to (i) the treatment of opioid use disorders; (ii) the prevention, education, and treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

**D.  Lobbying Restrictions**

1.     The Company shall not directly, or by employing or controlling a Third Party, Lobby for the enactment of any federal, state, or local legislation or promulgation of any rule or regulation that:

   a.     Encourages or requires Health Care Providers to prescribe Opioids or sanctions Health Care Providers for failing to prescribe Opioids or failing to treat pain with Opioids;

   b.     Would have the effect of limiting access to any non-Opioid alternative pain treatments; or

   c.     Pertains to the classification of any Opioid or Opioid Product as a scheduled drug under the Controlled Substances Act.

2.     The Company shall not directly, or by employing or controlling a Third Party, Lobby against the enactment of any federal, state or local legislation or promulgation of any rule or regulation that supports:

a.      The use of non-pharmacologic therapy and/or non-Opioid pharmacologic therapy to treat chronic pain over or instead of Opioid therapy, including but not limited to Third Party payment or reimbursement for such therapies;

b.      The use and/or prescription of immediate release Opioids instead of extended release Opioids when Opioid therapy is initiated, including but not limited to Third Party reimbursement or payment for such prescriptions.

c.      The prescribing of the lowest effective dose of an Opioid, including but not limited to Third Party reimbursement or payment for such prescription;

d.      The limitation of initial prescriptions of Opioids to treat acute pain;

e.      The prescribing and other means of distribution of naloxone to minimize the risk of overdose, including but not limited to Third Party reimbursement or payment for naloxone.

f.      The use of urine testing before starting Opioid therapy and annual urine testing when Opioids are prescribed, including but not limited to Third Party reimbursement or payment for such testing;

g.      Evidence-based treatment (such as using medication-assisted treatment with buprenorphine or methadone in combination with behavioral therapies) for Opioid Use Disorder, including but not limited to third party reimbursement or payment for such treatment; or

h.      The implementation or use of Opioid drug disposal systems that have proven efficacy for the Company's Opioid Products.

3.      The Company shall not directly, or by employing or controlling a Third Party, Lobby against the enactment of any federal, state or local legislation or promulgation of any rule or regulation limiting the operation or use of PDMPs, including, but not limited to, provisions requiring Health Care Providers to review PDMPs when Opioid therapy is initiated and with every prescription thereafter.

4.      Nothing in Section II.D or this Injunction, however, limits the Company from:

a.      Challenging the enforcement of, or suing to stop the enactment of, or for declaratory or injunctive relief with respect to any legislation, rules, or regulations, including legislation, rules, or regulations relating to any issues referred to in Section II.D.1;

b.      Communications made by the Company in response to a statute, rule, regulation, or order requiring such communication;

c.      Communications by a representative of the Company appearing before a federal or state legislative or administrative body, committee, or subcommittee as result of a mandatory order, subpoena commanding that person to testify or an unsolicited request from an elected or appointed official, federal or state legislative or administrative body, committee, or subcommittee.

d.      Responding to an unsolicited request for the input on the passage of legislation or the promulgation of any rule or regulation.

l.      Communications by the Company, including to elected or appointed officials, federal or state legislative or administrative bodies, committees, or subcommittees regarding (i) mechanisms for preventing opioid abuse and misuse, including abuse deterrent formulations and the use of blister packaging for opioid medications, (ii) the prevention, education, and treatment of opioid use disorders or opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and/or (iii) rescue medications for opioid overdose.

5.      The Company shall require all of its officers, employees and representatives engaged in Lobbying to certify in writing to them that they are aware of and will fully comply with the provisions of this injunction with respect to Lobbying.

## E.      Ban on High Dose Opioids

**1.**      The Company shall abide by any decision by the FDA on the pending Citizens Petition dated September 1, 2017 (docket number FDA-2017-P-5396) requesting a ban on specific high doses of prescription oral and transmucosal Opioids that, when taken as directed, exceed 90 morphine milligram equivalents per day.

## F.      Ban on Prescription Savings Programs

1.      The Company shall not directly, or by employing or controlling a Third Party, Promote savings card, vouchers, coupons, or rebate programs to Health Care Providers for any Opioid Product.  Nothing in this provision shall prohibit the Company from providing savings cards, vouchers, coupons, or rebate programs, including electronic point-of-dispense programs:  (i) in response to requests from Health Care Providers, patients, or other caregivers or (ii) on its website or product-specific websites.

2.      The Company shall not directly or through a Third Party provide financial support to any Third Party to avoid the prohibited conduct in Section II.F.1 above.

## G.      Self-Monitoring and Reporting of Direct and Downstream Customers.

1.      The Company shall operate an effective monitoring and reporting system that shall include processes and procedures that:

a. Reasonably analyze all collected Direct Customer Data to identify a Suspicious Order of a Company Opioid Product by a direct customer;

b. Reasonably utilize available Downstream Customer Data to identify whether a downstream customer poses a material risk of diversion of a Company Opioid Product;

c. Analyze all information that the Company receives that indicates an unreasonable risk of diversion activity of a Company Opioid Product or an unreasonable potential for diversion activity of a Company Opioid Product, by a direct customer or a downstream customer, including reports by employees and customers of the Company, Health Care Providers, law enforcement, state, tribal, or federal agencies, or the media; and

d. Unless otherwise required by law, upon a relevant state's request, report to the relevant state agency any direct customer or downstream customer in each state that the Company has identified as part of the monitoring required by (a)-(c), above, and any Company customer relationship in each state that was terminated by the Company because of an unreasonable risk of diversion or unreasonable risk for potential for diversion.

2. Upon request, the Company shall promptly provide reasonable assistance to law enforcement investigations of potential diversion and/or suspicious circumstances involving the Company's Opioid Products subject to, and without waiving, any applicable privilege objections.

3. If one or more of the nation's three largest pharmaceutical distributors establishes a system to aggregate data concerning transactions of Opioid Products and/or concerning reports of Suspicious Orders of Opioid Products, and the system is designed to use information provided by manufacturers of Opioid Products, the Company shall provide information to such system to the extent reasonably available and feasible, subject to, and without waiving, any applicable privilege objections.

4. The Company agrees that it will refrain from acting as a distributor of Opioid Products by providing an Opioid Product directly to a retail pharmacy or Health Care Provider or otherwise engaging in activity that requires it to be registered as a distributor under the Controlled Substances Act unless otherwise required by local, state, or federal law. Nothing in this provision, however, prevents the Company from acting as a distributor of medications relating to (i) the treatment of opioid use disorders; (ii) the treatment of opioid abuse, addiction, or overdose, including medication-assisted treatment for opioid addiction; and (iii) rescue medications for opioid overdose.

**H.      Appointment and Responsibilities of Monitor.**

1.      The Company shall work expeditiously to retain a Monitor, and shall consult in good faith with the Official Committee of Unsecured Creditors, the Ad Hoc Group of Non-Consenting States, and the ad hoc committee of governmental and other contingent litigation claimants, as to proposed candidates for the Monitor.

2.      The Monitor shall perform its duties according to the terms of this injunction and shall be vested with all rights and powers reasonably necessary to carry out such powers, duties, authority, and responsibilities enumerated herein.

3.      The Monitor shall work with all diligence to confirm and oversee compliance with this injunction, and shall provide reports to the Company's Board of Directors and the Bankruptcy Court as outlined below.

4.      The Monitor shall:

a.      subject to any legally recognized privilege and as necessary or to perform their duties hereunder, have full and complete access to the Company's personnel, books, records, and facilities, and to any other relevant information, as the Monitor may request.  The Company shall develop such information as the Monitor may request and shall fully, completely and promptly cooperate with the Monitor.  The Monitor may raise with the Court any issues relating to any failure of or delay in such cooperation for an expedited resolution by the Court;

b.      serve, without bond or other security, at the cost and expense of the Company, with the Monitor's fees subject to final approval by the Court. The Monitor shall have the authority to employ, upon Court approval, at the cost and expense of the Debtors' estates, such consultants, accountants, attorneys, and other representatives and assistants as are necessary to carry out the Monitor's and responsibilities.  The Monitor shall serve throughout the term of this injunction and submission of a final report;

c.      have no obligation, responsibility or liability for the operations of the Company;

d.      file a report no less than every 90 days regarding compliance by the Company with the terms of this injunction; provided that elements of any such report may be filed under seal or subject to such other confidentiality restrictions contained in the Protective Order.  The Court may, in response to such reports, provide further direction to the Monitor as it deems appropriate;

e.      sign onto the Protective Order entered by the Court in this matter, and any confidentiality agreement consistent with the Protective Order as deemed necessary by the parties, and each of the Monitor's consultants,

accountants, attorneys and other representatives and assistants shall also sign onto the Protective Order entered by the Court, and any confidentiality agreement consistent with the Protective Order as deemed necessary by the parties; *provided, however*, that nothing shall restrict the Monitor from providing any information to the Court and the parties consistent with the terms of the Protective Order; and

f.      promptly seek an order requiring compliance or such other remedies as may be appropriate under the circumstances should the Company not comply with this injunction.

5.      **Disputes Regarding Compliance**

a.      If an Attorney General should have a reasonable basis to believe the Company is not in compliance with the terms of this injunction, the Attorney General shall notify the Company, via the Company's General Counsel, in writing of the specific objection, including identifying the provisions of this injunction that the practice appears to violate, and give the Company thirty (30) days to respond to the notification and cure the conduct at issue, if necessary.

b.      The Attorney General shall provide notification to the Monitor at the same time as notification is provided to the Company.  To the extent that the Company fails to cure the alleged conduct within the thirty (30) day period, the Monitor shall have ten (10) days to determine the appropriate action and response.  After that ten (10) day period and unless otherwise ordered by the Monitor or Bankruptcy Court, any Attorney General may petition the Bankruptcy Court  to enforce the terms of this injunction and/or to obtain any remedy as a result of alleged non-compliance with the Company.

I.      **Initial Covered Sackler Persons**

c.      The Initial Covered Sackler Persons shall not actively engage in the opioid business in the United States (other than by virtue of their ownership of beneficial interests in the Company), and shall not take any action that would interfere with the Company's compliance with its obligations under this injunction.

## Appendix II

## Form of Withdrawal Notice

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[5] | **(Jointly Administered)** |

## <u>NOTICE OF WITHDRAWAL FROM THE PRELIMINARY INJUNCTION</u>

By this notice of withdrawal (this "**Withdrawal Notice**"), [NAME OF PARTY] hereby provides notice of its withdrawal from voluntary compliance with the terms of the *Third Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Docket No. ●] (the "**Preliminary Injunction Order**"), effective upon entry of the amended order (the "**Amended Order**") involuntarily binding [NAME OF PARTY] to the terms of such Amended Order until and including April 8, 2020.

[NAME OF PARTY]

By: _____

---

[5] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.